**SEYBOLD v. JOHNSON et al.   (No. 12014.)***

Court of Civil Appeals of Texas.   Fort Worth.
Oct. 13, 1928.

Rehearing Denied Nov. 17, 1928.

Preston Martin and G. A. McCall, both of Weatherford, and Stephens & Stephens, of Fort Worth, for appellant.

Hood & Shadle, of Weatherford, and H. D. Payne, of Floydada, for appellees.

BUCK, J. On February 14, 1927, plaintiff, Elmer Seybold, appellant here, filed suit against W. M. Johnson, W. E. Lagow, and Mrs. E. P. Polk, a widow, for debt and foreclosure. Plaintiff alleged that on August 25, 1924, the defendant Johnson, for a valuable consideration, made and executed to plaintiff his certain negotiable promissory note in the sum of $6,500, dated August 5, 1924, and payable to the order of plaintiff on or before three years after date, with interest at the rate of 8 per cent. per annum, and providing the usual attorney's fees.

Plaintiff alleged that said note was secured by a deed of trust lien on certain property described, consisting of 235 acres of farm land in the southeast portion of Parker county. He alleged that the deed of trust contained covenants of the grantor that he would promptly pay the interest on said note when due, and would keep the taxes on said property promptly paid, and that, upon default on the payment of any installment of interest on said note, or failure to pay the state or county taxes, the entire indebtedness should become due and payable. Plaintiff further alleged that Johnson had failed to pay the annual interest on August 25, 1925, and August 25, 1926, and had failed to pay taxes on said property for the year 1926, and plaintiff had exercised his option to declare the entire indebtedness on said note due and payable, and so notified defendant Johnson; that, although requests had been duly made of said defendant for the payment of the note and interest, defendant had failed and refused to pay the same or any part thereof, and plaintiff had placed said note in the hands of attorneys for collection.

Plaintiff further alleged that defendants W. E. Lagow and Mrs. E. P. Polk were claiming some sort of an interest in the land above referred to, but they had no interest, or, if they had any such interest, it was inferior to plaintiff's.

Mrs. E. P. Polk and W. E. Lagow, defendants, filed their answer, consisting of a general demurrer and a general denial, and for special answer pleaded that D. F. Minney was a creditor of theirs long prior to the execution of the deed of trust by Johnson to plaintiff, and the said two defendants were the assignors of the Southern Manufacturing Company, in a suit in which said manufacturing company had secured a judgment against said D. F. Minney and said two defendants for $1,042.10, with 10 per cent. damages and costs of suit; that said defendant Johnson and said D. F. Minney had conspired to defeat the said two defendants and their assignor out of the collection of their debt, and had entered into a scheme to defraud them; that said D. F. Minney was the owner of a one-half interest in a valuable lease in Fort Worth, which was subject to his debts, and on the 21st day of July, 1924, the said Minney, intending to defeat and defraud his creditors and cover up his property and place the same beyond the reach of his creditors, made a transfer of his said lease to his wife, Mrs. Edna Minney, and that subsequently, to wit, on July 30, 1924, the said Mrs. Minney, joined by her husband, transferred said lease to Elmer Seybold in pay-

*Writ of error dismissed.

ment for the land sought to be foreclosed; that on August 4, 1924, the said Mrs. Minney, joined by her husband, transferred the land against which a foreclosure was sought to defendant Johnson for a false and fictitious consideration, and that these two conveyances by Minney to his wife and by Minney and wife to Johnson were fraudulent, simulated, and void, and that, at the time the deed of trust to plaintiff was executed by Johnson, the beneficial title to said land was in Minney, and not in Johnson, and that both the deed to Johnson from Mrs. Minney and husband and the deed of trust by Johnson to Seybold were void and of no effect; that the two defendants had this land levied on and sold and bought the same in, and are now the owners of the same; that the defendant Johnson was at no time the owner of said land so that he could legally mortgage it, and of this the plaintiff well knew; that therefore the mortgage sought to be foreclosed is void, and should not be foreclosed.

Defendants further pleaded that the plaintiff had knowledge of the intention of Minney and the defendant Johnson at the time he took said mortgage or deed of trust lien, or had notice of such facts as would place a prudent man on inquiry which would lead to the discovery of said fraud; that for this reason said mortgage is void as to the said defendants, and should in all things be canceled. Defendants further pleaded that Minney and his wife now reside in California, and defendant Johnson resides in Tarrant county, Tex. These defendants asked for citation, and, on hearing, that the said instruments be declared void and the plaintiff denied a foreclosure of his pretended lien.

Defendant Johnson answered that on the 20th day of November, 1926, at a regular term of the district court in and for Parker county, Tex., in a certain suit therein pending wherein W. E. Lagow and Mrs. E. P. Polk were plaintiffs and said Johnson was defendant, the same suit set up by the defendants Lagow and Mrs. Polk as in this suit, and in their cross-action against this defendant, said Lagow and Mrs. E. P. Polk, as plaintiffs, recovered judgment against this defendant for the title to, and possession of, the 235 acres of land in Parker county, described in the petition, which judgment still remains in full force and effect, and has been in nowise reversed, satisfied, or made void, and that this defendant is ready to verify by the record the facts so pleaded. Wherefore he prayed that said Lagow and Mrs. E. P. Polk take nothing by their cross-action and that defendant be discharged as to this cross-action, with his costs. Defendant also pleaded a general denial as to this cross-action.

The plaintiff filed a supplemental petition in answer to defendants Lagow and Mrs. Polk's answer and cross-action, and pleaded specially that the defendants Lagow and Mrs. Polk were associated in business with said Minney and were equally liable with said Minney for the debt of the Southern Manufacturing Company, which recovered the judgment mentioned in said amended answer, and, in order to assist said Minney to defeat or delay the collection of said debt, for which said debt they were bound, became sureties on the appeal and supersedeas bond of said Minney, who was then residing in Texas, but who thereafter moved to California, and, when said judgment was affirmed on appeal, the said Lagow and Mrs. Polk, instead of paying off the judgment rendered against them as sureties on said appeal bond, obtained an assignment of said judgment, and caused execution to be levied on the tract of land covered by plaintiff's mortgage, and bought the same at a sheriff's sale for the inadequate sum of $150, although said tract of land was of the value of about $12,000; that at said sale defendants paid the amount bid by having it entered as a credit upon said judgment; that, pending said appeal, and while the records of Tarrant and Parker counties failed to show that any such judgment had been abstracted against Minney, the plaintiff, without any knowledge or notice, actual or constructive, of said judgment, and finding that the records of Parker county showed the title to said land to be clear in W. M. Johnson, and knowing that he had conveyed said land to Mrs. Minney for a valuable consideration, made said loan to Johnson, and took said mortgage or deed of trust in good faith, without notice of the matters set up in said amended answer or of any defect whatever in the title of said Johnson.

Plaintiff further alleged that, if said Johnson acquired title to said land in the fraudulent manner alleged in said answer, which was not admitted but denied, the plaintiff had no knowledge or notice, actual or constructive, of said alleged fraud or of any defect in the title of said Johnson to said land when he made said loan and took said note and deed of trust, or at any time prior thereto, but, on the contrary, he took said mortgage in good faith and for a valuable consideration without any such notice. Plaintiff further alleged that on July 30, 1924, and prior thereto, he was himself the owner of the tract of land described in said mortgage, and on that day conveyed the same to Mrs. Minney, wife of D. F. Minney, and paid to her a valuable consideration therefor, and that this transaction was in good faith on the part of plaintiff, and that, if it was the purpose or intention of said D. F. Minney in conveying a half interest in the lease to his wife, or of either said Minney or Mrs. Minney in the transaction with plaintiff, or in the transaction with the defendant Johnson, in conveying said land to him, to hinder, delay, or defraud creditors of said Minney, or the defendants Lagow and Mrs. Polk, which is not admitted, but denied, the

plaintiff had no knowledge or notice, actual or constructive, of any such fraudulent intent or purpose when he conveyed said land to Mrs. Minney and paid said money, or when he took said mortgage from said Johnson.

The cause was tried before a jury on special issues, and the court found that defendant Johnson was indebted to plaintiff in the sum of $7,857.75, principal and interest, and gave judgment for plaintiff as against the defendant Johnson in the sum of $8,643.52, with interest from date of judgment at the rate of 8 per cent. per annum, and for costs of suit. The court further decreed that the lien on the tract of land as it existed on August 25, 1925, be foreclosed, and that said land be sold as under execution, and the proceeds applied to the satisfaction of this judgment; the balance, if any, to be paid to said defendant Johnson; but that no order of sale was to issue until the matters in controversy between the plaintiff and the other defendants should be determined. In another part of the judgment, the trial court held that Johnson, having made no defense to this suit, and no defense to said note, and it appearing to the court that the claim was liquidated and evidenced by said note, should pay to plaintiff the sum of $9,009.72, being principal, interest, and attorneys' fees, with 8 per cent. interest per annum thereon from the date of judgment, and all costs of suit, but no foreclosure was granted.

The cause was submitted on three special issues, which are hereinafter given with their answers:

"Issue No. 1. In the conveyance by D. F. Minney of his one-half leasehold estate in the Vincent building to his wife, Edna Minney, and in the conveyance of said one-half leasehold estate by Mrs. Minney, joined by her husband, to the plaintiff, Seybold, in exchange for the Parker County land, and in the conveyance by said D. F. Minney and wife to the defendant W. M. Johnson, of said Parker County land, was it the purpose of said D. F. Minney and wife thereby to hinder delay or defraud the creditors of D. F. Minney, or to defeat them or any of them in the collection of their debt or debts against the said D. F. Minney? Answer: Yes.

"If you answer the foregoing issue in the affirmative, and if you have answered that the purpose of the conveyance of D. F. Minney and wife of the Parker County land to the defendant W. M. Johnson was made for the purpose of hindering, delaying or defrauding creditors of D. F. Minney or defeating them in the collection of their debts against him, then answer the following:

"Issue No. 2. At the time the Parker County land was conveyed to the defendant W. M. Johnson, by D. F. Minney and wife, did said Johnson have knowledge or notice of their said fraudulent purpose if you find they had such purpose? Answer: Yes.

"If in answer to preceding issues you find

that the conveyance of the Parker County land by D. F. Minney and wife to the defendant W. M. Johnson was made by them for the purpose of defrauding the creditors of D. F. Minney and that the defendant, W. M. Johnson, had notice or knowledge of such fraudulent purpose, then answer the following:

"Issue No. 3. At the time the mortgage on the Parker County land in question was made by the defendant, W. M. Johnson, to the plaintiff Elmer Seybold, did the plaintiff Elmer Seybold have knowledge or notice that the Parker County land was conveyed to Johnson by D. F. Minney, if you have found that said conveyance was made for that purpose? Answer: Yes."

The court further instructed the jury that he had permitted certain witnesses to testify as to conversations with defendant Johnson; said testimony having been qualified orally by the court at the time same was permitted, and he instructed the jury that:

"If you believe said testimony bears upon the issue of the alleged fraudulent intent or purpose of Minney and wife, or upon the issue as to whether defendant Johnson had notice of such fraudulent intent or purpose, if any there was, then you may consider such testimony upon the said issues alone, and give the same such weight and credence as you may deem the same entitled to receive; but it appearing that the plaintiff Elmer Seybold was not present at any of the said conversations, you will not consider the same as any evidence on the issue as to whether or not the plaintiff had notice of any fraudulent purpose on the part of Minney and wife in making any of the conveyances testified about in this case, if you find there was such fraudulent purpose."

At the request of plaintiff, the court gave the jury this special instruction:

"You are instructed that the burden of proof is on the defendants Polk and Lagow to show by the evidence that the plaintiff had notice of the alleged fraud in the transactions between D. F. Minney and Edna Minney and W. M. Johnson, and if they have failed to show by the evidence that plaintiff had such notice, you will find in favor of the plaintiff on the issue of notice."

From this judgment the plaintiff has appealed.

## Opinion.

█ We think the trial court properly peremptorily instructed the jury to find for plaintiff as against defendant Johnson as to the debt upon which the suit was filed, and that no instructions were necessary as to whether certain testimony in the record tended to prove knowledge on the part of defendant Johnson of Minney's insolvency at the time of the conveyance by him of a one-half interest in the lease of the property, known as the Vincent property, in the city

of Fort Worth, although some of these conversations were had after the conveyance by Minney to his wife. See Johnson v. Lagow, 6 S.W.(2d) 383, by this court, application for writ of error to the Supreme Court pending. Yet we are of the opinion that these conversations, had by the witnesses with Johnson, in the absence of plaintiff, and where the evidence fails to show that he had any knowledge or notice thereof, were not available as against plaintiff to show knowledge or notice of any fraudulent intent or purpose on the part of Minney and his wife in making the conveyance from Minney to his wife, and from Minney and his wife to Johnson. The court, we think, properly instructed the jury that they could not consider such testimony as evidence on the issue as to whether or not the plaintiff had notice of any fraudulent purpose on the part of Minney and wife in making any of the conveyances testified about in the case, if the jury should find there was such fraudulent purpose.

■ We think the only question involved in this appeal is as to whether the evidence discloses any facts which would have put plaintiff at the time, and prior to his lending the money to Johnson and the execution of the note and deed of trust securing the same, on notice of any fraudulent purpose on the part of Minney or his wife in making said conveyances. If the evidence does not raise such an issue, a peremptory instruction should have been given. Seybold testified that he knew nothing of any insolvency on the part of Minney at the time of the execution of the deed of trust; that he had a lawyer by the name of Smith to examine the abstract of title to the property in controversy; and that he told him that defendant Johnson had a clear title thereto. There was no evidence introduced to show knowledge on the part of plaintiff, or notice of any facts which, if pursued, would have disclosed that, at the time of the execution of the deed of trust and note by Johnson, and the lending of the money to Johnson by plaintiff, plaintiff had any notice of any insolvency on the part of Minney, except, as claimed by appellee, such notice as was evidenced by the cross-examination of plaintiff. Minney, the insolvent debtor, made a conveyance to his wife on July 21, 1924. On July 30, 1924, Mrs. Minney, joined by her husband, conveyed this one-half interest of the lease to Elmer Seybold, and on the following day, to wit, August 1, 1924, said Seybold conveyed the land in question to Mrs. Minney. Three days after this conveyance, Mrs. Minney conveyed the land to defendant Johnson, who was part owner of the lease on the Vincent building. On August 25 thereafter, 21 days after the last-named conveyance, defendant Johnson secured a loan from said plaintiff on the land plaintiff had traded to Mrs. Minney.

The cross-examination of plaintiff by appellee's attorney disclosed that he was not well acquainted with defendant Johnson at the time of the execution of the deed of trust; that he had known him for only a short time; that in trading his land for the one-half interest in the Vincent lease Johnson represented Minney. He testified:

"Minney and his wife owned a half interest in the lease and Dr. Johnson was present, and he wanted to know if I wanted to buy that lease and I told him I would if I could put some land up. When that transaction occurred we were on the street near 5th and Main. * * * I was in Fort Worth about once a month. When I had the conversation with Dr. Johnson, near 5th and Main, I had not met Minney at that time. I had a lawyer to look into this matter. I was not familiar with those things. I never read the deed. I had a lawyer to look into the title and pass on it. My lawyer was named Smith; had an office on First and Main. When I executed these papers I was in Fort Worth, at Smith's office on First and Main. I had not had any transactions with Minney prior to that time. * * * I saw the lease before I saw Minney. I saw the Vincent lease. I never saw the assignment from Minney to Mrs. Minney. When we were going to trade I had a lawyer to pass on those papers. Mr. and Mrs. Minney were both together and I was making the trade through Johnson. I was buying from Mrs. Minney. She represented to have the lease, and I had seen the Vincent lease. I could not say I knew at that time that Minney had transferred the lease to his wife, because I never went into the details. It looked like he would have had to make the conveyance to her, but as far as my knowing when it was done, I did not know anything about that. * * * I have known Johnson two or three months. That note transaction was the first transaction I had with him, when I met him, and that was the only one I had with him up to that time. Johnson refused to buy Minney out, and then we went to Minney's office. Smith prepared these papers and took the acknowledgments. I think he took the acknowledgments to these deeds. * * * As to who made this deal, Mrs. Minney was there once or twice, but Mr. Minney done about all the talking, representing his wife. After Chapman introduced me to Dr. Johnson, I bought the note about a week later. When Chapman introduced me to Johnson it was just a casual meeting. The discussion at that time was not in reference to finances. The way I came to buy the note from Dr. Johnson when I did, I had a little money and wanted to put it to work, and this note, he said he wanted to sell it. He came to me on that occasion, I did not know about Dr. Johnson's business condition at that time. I had a man to look up those papers, I was buying the notes as security. I had not had his business affairs looked into, except that one business is all. I did not meet Dr. Johnson

more than two or three times after that note deal until this thing came up. Those meetings were in Fort Worth. I was in and out of there occasionally. I suppose I met him six or seven times from the first time I met him until he and I went into this deal. I would just meet him through Mr. Chapman, he and I would run around together, and I would meet him occasionally when I came down. * * * I think Smith wrote the deed from me to Mrs. Minney. He got his information from the abstract. That is the way I had it in my mind, that I was in his office when he made the deed, and he had a copy of the lease and he knew about the transaction. I don't know where. All I had anything to do with was to make a deed of the farm. * * * The way I came to make that loan, he came to me and said, 'I bought that land from Minney and want to borrow some money on it,' and I told him at the time I would make the loan if they wanted to borrow some money; told Minney and Johnson. That was not before I got hold of it. That was after the trade was made. I did not tell them that the same time this deed was made. I suppose it was a week later. I told Dr. Johnson and Minney. I used the word 'them' because they were together. I think Minney was there. I would not be positive whether his wife was there or not. * * * With reference to the loan they made the remark they wanted to borrow some money—Dr. Johnson and Minney."

■ We are of the opinion that this evidence is not sufficient to raise the question of any knowledge of plaintiff, or any notice to him, that Minney was insolvent at the time of the conveyance by him to his wife of the one-half interest in the Vincent lease. At most, such evidence constitutes a mere scintilla of evidence, or a mere surmise, that plaintiff might have had knowledge of the insolvency of Minney at the time Minney conveyed the interest in the Vincent lease, when Johnson executed the note for the loan. A scintilla of evidence, or a mere surmise that the facts necessary to establish the cause of action may be true, is not sufficient to authorize a submission of the question involved to the jury. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059; Fort Worth Belt Ry. Co. v. Jones, 106 Tex. 345, 166 S. W. 1130; 16 Cyc. 1051; Mo. Pac. Ry. Co. v. Porter, 73 Tex. 307, 11 S. W. 324; 23 Corpus Juris, § 1795, p. 51, in which it is said: "A verdict or finding must rest upon facts proved or at least upon facts of which there is substantial evidence, and cannot rest upon mere surmise, speculation, conjecture, or suspicion. There must be legal evidence of every material fact necessary to support the verdict or finding, and such verdict or finding must be grounded on a reasonable certainty as to probabilities from a fair consideration of the evidence and not a mere guess, or on possibilities."

■ Testimony that raises a mere surmise or suspicion of the existence of a fact sought to be established in legal contemplation falls short of being "any evidence." Logan v. Curry, 95 Tex. 664, 69 S. W. 129; Mitchell v. Robison, 103 Tex. 642, 132 S. W. 465; De Shazo v. Eubank (Tex. Civ. App.) 191 S. W. 369.

The only other evidence to show notice, except that of the character noted, is the testimony of certain witnesses to the effect that Minney's reputation for insolvency was notorious, and the contention is made by appellees that the plaintiff is chargeable with knowledge thereof, by reason of the notoriousness of such reputation. The testimony of Mrs. Polk, a party to the suit, was:

"I knew the general reputation of D. F. Minney in Fort Worth, Texas, during the months of July and August, 1924, as to solvency or insolvency and that reputation was that he was insolvent. I do not know of any property that Minney had out of which we could have made that judgment. I have sought and had my lawyers to inquire to see if something could be found in this state that belonged to Minney, and I have not been able to find anything. * * * What I mean by general reputation, for instance Minney was behind in our gas bill, oil bill, and all that, and the gas people would not give him any credit. He was slow in paying these bills. They would not take his name on paper at all. That is the way I understood general reputation."

W. E. Lagow, also a party to the suit, testified as to Minney's reputation for insolvency as follows:

"I know the general reputation of Mr. Minney during the months of July and August, 1924, in regard to being solvent or insolvent, and the reputation was that he was insolvent."

On cross-examination he testified:

"I tell the jury Minney was insolvent. Quite a number told me that was his reputation, Dr. Johnson is one of them. He told me that in Fort Worth, I don't remember the date. It was in 1924. I don't remember the date. There were numbers that told me that. Judge E. B. Hendricks, an attorney, was one of them. He represented us three as attorney. Dr. Cregg also told me that. His office was in the Worth building. He was one of our patrons. He was not my physician; did not treat me. I do not know whether he treated other members of the firm or not. He was there in the office when he told me that. I do not know what property Minney paid taxes on at that time. I never examined."

We think this character of testimony is insufficient to show such a general notoriousness of insolvency as might impute to the plaintiff a notice thereof. Especially is this true when the evidence shows that he did not live in Fort Worth, and was in and out of the city at intervals of several weeks, or months, perhaps, and his family lived some 19 or 20 miles from Fort Worth, and he was working in the distant oil fields.

We conclude that the defendant failed to show either knowledge of the fact of Minney's insolvency or notice thereof, and that, according to the uncontradicted testimony, plaintiff had no such knowledge or notice. Therefore we conclude that the judgment below should have been for plaintiff as against the defendant Johnson for the amount of the debt and a judgment for foreclosure as against all parties defendant. Therefore the judgment below will be reformed. Judgment is here rendered for appellant, awarding him judgment for the debt found by the trial court to be due, and judgment given for foreclosure as to W. E. Lagow and Mrs. E. P. Polk. It is further decreed that the property shall be sold to satisfy plaintiff's judgment; that out of the remaining equity in the property, if any, the debt of Mrs. E. P. Polk and W. E. Lagow shall be satisfied.

### Appellee's Motion for Rehearing and to File Additional Findings of Fact.

BUCK, J. We have examined the motion for rehearing, but still adhere to our original judgment.

In compliance with appellees' motion for additional findings of fact, we find that on cross-examination of plaintiff Seybold he testified:

"With reference to the loan, they made the remark they wanted to borrow some money —Dr. Johnson and Minney. That was after the deed was made. I knew they wanted to borrow some money before I turned the check loose. I did not know in what way they were together as to the land. I did not positively know they were interested together. I have testified here that I told them I would loan $6,500 on that land. That was after we had closed this deal but before I made the $6,500 loan. We were talking there. He wanted to borrow some money. At that time I did not know whether they were interested in the land or not."

The motion for rehearing is overruled, and the motion for additional findings of fact is granted.