## MAYER v. JOHNSON et al.
### No. 5262.

Court of Civil Appeals of Texas. Amarillo.

Feb. 17, 1941.

Rehearing Denied March 10, 1941.

Fischer & Strickland, of Amarillo, for appellant.

C. H. Heard, of Dallas, and D. H. Culton and Morgan, Culton, Morgan & Britain, all of Amarillo, for appellees.

STOKES, Justice.

This suit was filed by appellant, Richard Mayer, a minor, acting by his mother and father, Ed R. Mayer, as next friends, against appellees, Montford T. Johnson, and his son, Montford T. Johnson, Jr., a minor, for damages arising from personal injuries received by appellant in an automobile accident which occurred November 25, 1937.

When appellant concluded the introduction of his testimony and rested his case, appellees presented to the court a motion for a peremptory instruction, which was granted, and judgment was entered that appellant take nothing by his suit. His motion for a new trial being overruled, appellant duly excepted, gave notice of appeal and has perfected an appeal to this court.

The record shows that the automobile which belonged to Montford T. Johnson was being operated by his son, Montford

T. Johnson, Jr., and that appellant, together with six other young people, were occupying the same as guests of appellee, Montford T. Johnson, Jr. The young people were in attendance upon a social function at the club house of the Amarillo Country Club, located a short distance west of the city of Amarillo, and about midnight, during an intermission, they got into the automobile and drove to the Colonial Kitchen for some refreshments, the Colonial Kitchen being located in the city of Amarillo about a mile east of the club house. While partaking of the refreshments some other young people came to the Colonial Kitchen and conferred with some of the occupants of Johnson's car, after which they left the Colonial Kitchen and proceeded back in the direction of the club house. It seems that the occupants of the Johnson car thought the occupants of the other automobile were following them and, in a playful mood, Johnson, Jr., on his way back toward the club house, drove his car into a street leading in another direction, turned off the lights, turned the car around and stopped for the purpose, it seems, of dodging the other car. The Johnson car remained in this side street for some few minutes, with the lights off, and, thinking they had succeeded in dodging the other young people, Johnson turned the lights on and proceeded back to Tenth Street, the street which he had left when he drove into the side street, thence west on Tenth Street to Avondale Avenue. He turned to the right on Avondale, crossed the railroad, and again turned off the lights of the car and proceeded several blocks on Avondale Avenue to Highway No. 66, some seven or eight blocks north of and parallel to Tenth Street. The point at which they reached Highway No. 66 was near the southwest corner of the Country Club grounds and several hundred yards west of the entrance to them. The testimony shows that some of the young people thought the driver would proceed east on Highway No. 66, enter the club grounds, and return to the club house, but instead, he made a slight jog to the left and entered a road which proceeded on north just outside and along the west line of the club grounds. While driving along this portion of the route Johnson, Jr., again extinguished the automobile lights, but upon being requested to turn them on and being reminded that the road was exceedingly rough, he turned them on again and proceeded north until he reached the northwest corner of

the club grounds where he approached the Gem Lake road coming from the west and running east along the north side of the Country Club grounds. Here he stopped his car and then proceeded to enter the Gem Lake road, turned to the right, or east, and again extinguished the lights of his automobile. Upon some complaint being made he remarked that he could not see but again turned on the lights and proceeded east on Gem Lake road for about a half mile where the road ended by entering Western Avenue, a paved road running north and south. On the east side of Western Avenue was an embankment against which the car plunged and the impact demolished the car and resulted in personal injuries to appellant, for which he seeks damages.

A number of assignments of error and propositions of law are presented and urged by appellant but, in the view we take of the case, the controlling issues are presented by the fourth and fifth propositions in which the contentions are made, first, that the court erred in instructing the jury to return a verdict in favor of Montford T. Johnson, the father, because there was abundant evidence to support a finding by the jury of negligence on the part of Montford T. Johnson, Jr., and, he having used the car with the knowledge and consent of Johnson, Sr., who knew his son, Johnson, Jr., was not a safe and careful driver, the father would be liable to appellant for the damages suffered by him as a result of the son's negligence. Secondly, that the court erred in instructing the jury to return a verdict in favor of Montford T. Johnson, Jr., because there was abundant evidence to support a finding of gross negligence on his part in the manner in which he operated the car which resulted in the accident and consequent injury and damage to appellant.

 Since the decision of the Supreme Court in the case of Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063, 1067, the rules governing the liability of a father who permits his children to operate the family automobile have been settled in this state. In the opinion in that case Judge Hickman, speaking for the court, quoted a text from 5 Am.Jur. Automobiles, Sec. 355, as follows: "An owner who lends his automobile to another, knowing that the latter is an incompetent, reckless, or careless driver, is liable for such person's negligence; the owner's liability in

such cases is based upon his own negligence in intrusting the automobile to such a person. Intrusting the car to a minor child known to be a reckless and incompetent driver * * * constitutes an act of negligence for which the owner is liable." The rule thus announced is approved by the court as a sound principle of law sustained by the authorities and the liability of Montford T. Johnson, Sr., must be measured by its provisions. The only evidence in the record tending to show that Johnson, Jr., was an incompetent, careless or reckless driver is contained in his own testimony. He was called as a witness by appellant and testified that he had been up before the cops for speeding once at Borger. He said he did not remember whether he had paid a fine on that occasion but that he did not go to court. He said that he told his father about the incident and that he had the permission of his father to use the car the night the accident happened. We do not deem it necessary to go into an extended discussion of this phase of the case. The record does not show that the young man was actually violating the law at Borger on the occasion testified about by him. He merely stated that he had once been "up before the cops" but that he did not attend court in connection with the incident. Granting that he had been detained by the police at Borger or even that he had been charged with violating a traffic regulation of some kind and found guilty thereof, we do not think this one incident is sufficient to establish the fact that he was an incompetent, reckless or careless driver. It was shown that he had been driving the car for practically a year in and around Amarillo and that he had never had any other trouble or been charged or accused of recklessness, carelessness or incompetency in driving or operating an automobile. Under the law as announced by the Supreme Court in the case above cited, Montford T. Johnson, Sr., could not be held liable for the consequences of the accident which caused the damage in this case unless it was shown that his son was an incompetent, reckless or careless driver, and that the father knew of his incompetency in that respect. The testimony falls far short of establishing these elements and in so far as Johnson, Sr., is concerned, it is our conclusion that no cause of action was shown by the testimony. Appellant's contention that the court erred in giving the peremptory instruction as to Johnson, Sr., will, therefore, be overruled.

■ Under the next contention presented by appellant it is asserted that there was abundant evidence to support an action for gross negligence on the part of Montford T. Johnson, Jr., and that the court erred in giving the peremptory instruction as to him. The record shows that Johnson, Jr., was fourteen years of age in January, 1937, which was some nine months prior to the accident. He received from the State Highway Department the day after he became fourteen years of age a license to operate an automobile on the streets and highways of the state, and was still possessed of such license at the time of the accident. Our guest statute, Art. 6701b, Vernon's Annotated Civil Statutes, provides that no person transported over the public highways of this state by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages unless such accident shall have been intentional on the part of the owner or operator or caused by his heedlessness or his reckless disregard for the rights of others. The statute has many times been construed by the courts and it is now well established that the terms used by the statute simply mean gross negligence. Pfeiffer v. Green, Tex.Civ.App., 102 S.W.2d 1077; Scott v. Gardner, Tex.Civ.App., 106 S.W. 2d 1109; Hamilton v. Perry, Tex.Civ.App., 109 S.W.2d 1142; Raub v. Rowe, Tex.Civ. App., 119 S.W.2d 190; Mims v. Seltzer, Tex.Civ.App., 143 S.W.2d 973; Napier v. Mooneyham, Tex.Civ.App., 94 S.W.2d 564; Glassman v. Feldman, Tex.Civ.App., 106 S.W.2d 721.

The term "gross negligence" has been defined by the courts of this state in many decisions and has uniformly been held to be an entire want of care which would raise a presumption of a conscious indifference to consequences. Southern Cotton Press & Mfg. Co. v. Bradley, 52 Tex. 587, 600; Missouri Pac. Ry. Co. v. Shuford, 72 Tex. 165, 10 S.W. 408; Texas Pac. C. & O. Co. v. Robertson, 125 Tex. 4, 79 S.W.2d 830, 98 A.L.R. 262.

■ Appellant contends that the acts of Johnson, Jr., in extinguishing the lights of the automobile a number of times when they were on the circuitous route which was taken in the automobile immediately preceding the accident are significant in

respect to the attitude of his mind at the time and were sufficient to constitute evidence of heedlessness and recklessness which should have been submitted to the jury. We do not agree with appellant in this contention. The evidence shows the lights were extinguished four different times during the ride that was indulged in by the young people. The first time the lights were extinguished was on the side street or road into which Johnson steered his car from Tenth Street in a playful effort to dodge the young people who they thought were trailing them. He drove into this street, extinguished the lights, made a complete turn and stopped on the east side of the street. The only rational interpretation that can be made of this act is that it was done in mere play. We find in it no evidence whatever of recklessness, carelessness or indifference. When the journey was resumed the lights were again turned on and not again extinguished until the car had entered Avondale Avenue and crossed the railroad tracks. At that point Johnson again extinguished the lights and they remained off for a short distance, but appellant's witnesses agreed that the night was clear and he was driving in a cautious and careful manner. The lights were again turned on before he reached Highway No. 66, and upon entering the road just outside and west of the Country Club grounds, the lights were again extinguished, but on reaching a rough portion of the road he was asked to turn the lights on and retard his speed. This request seems to have been made because the road was rough and not because of the fact that the car was being driven at a high and rapid rate of speed. Upon reaching Gem Lake road at the northwest corner of the Country Club grounds, the car was stopped and another car passed in front of it going east on Gem Lake road which, according to the testimony, stirred up some dust. Immediately after the other car passed, Johnson started his car, entered Gem Lake road and turned to his right, which was going east, where the lights were again extinguished for a short distance. When complaint was made by some of the young people, Johnson remarked that he could not see very well but he again turned on the lights. These four times constituted the only occasions when the lights were extinguished, and during no time when the lights were out is it shown or even suggested that Johnson was driving the car at a high or dangerous rate of speed. We think it is conclusive that his acts in extinguishing the lights had nothing whatever to do with the accident which caused the injury to appellant and we find nothing in his conduct which indicates a heedless, careless or indifferent state of mind. The last time the lights were extinguished the car was almost a half mile from where the accident occurred and at no time did he fail to turn the lights on when requested. It was not shown that there was other traffic on the roads nor that any dangerous condition was created at any time by the extinguishment of the lights.

If heedlessness or reckless disregard for the rights of the occupants of the car is to be gleaned from the testimony, it must be found in some act of appellee, Johnson, Jr., other than his acts in extinguishing the lights. The only other act revealed by the testimony upon which it could be based is the rate of speed at which he drove the car down Gem Lake road immediately preceding the accident. The testimony and maps accompanying the record show that a short distance east of where the automobile entered Gem Lake road there is a considerable depression or "draw". Upon entering the depression the road declines for a considerable distance and after leaving the bottom of the depression it proceeds uphill, over a divide, and then into another slight depression. After ascending from the second depression and reaching the level again, it is only a short distance to Western Avenue and the bank against which the automobile collided. The testimony shows that upon entering the first depression and descending into it, the speed of the car accelerated until it was traveling about sixty miles per hour at the bottom. Upon emerging from the depression the speed decreased but the actual rate of speed at which the car traveled from there on is not shown. Appellant, who was in the front seat of the car with appellee, testified, however, that the speed of the car increased so that before reaching Western Avenue it was moving from twenty to thirty miles faster than it was at the bottom of the first depression where its speed was sixty miles per hour. If that is true it follows that before reaching Western Avenue, and immediately before the collision occurred, the car was being driven at a rate of around eighty miles per hour. It was shown by the testimony that the bank against which the car collided came into view on the road a distance of two hundred

feet from it and at about that point appellant warned appellee, Johnson, Jr., about the speed at which he was driving and requested him to "slow down." It was further shown that, beginning sixty-three feet from the embankment, the wheels of the car began to skid and continued to do so until the impact occurred. If the car was traveling eighty miles per hour at that point, a simple calculation will show that it was moving approximately 120 feet per second. After coming in sight of the embankment at 200 feet away, the driver, therefore, had less than two seconds of time in which to stop the car or in any other manner avoid the impact. A portion of this short period of time necessarily was consumed by the driver in placing his foot upon the brake and the skid marks on the road showed that during at least one-third of it the brakes were violently applied to the extent that the wheels were locked and skidding. It was not shown that Johnson knew before the accident that the embankment existed at the end of the road. One witness testified that he and Johnson had played golf nearby on a number of occasions and that the witness knew the embankment was there, but he did not know whether Johnson knew it or not. Under the testimony, therefore, Johnson could only be charged with such knowledge of its existence as he gained, or should have gained, after coming in sight of it two hundred feet away.

Discussing the question of gross negligence, Judge Smedley, in delivering the opinion of the Supreme Court in Texas Pac. C. & O. Co. v. Robertson, supra [125 Tex. 4, 79 S.W.2d 831, 98 A.L.R. 262], said: "The person charged with the act or omission cannot be consciously indifferent to the rights or welfare of another unless he knows, or should know, that such another will probably be affected by the act or omission." Applying that principle to the testimony in this case, in order to charge appellee, Johnson, Jr., with gross negligence, we are required to find from the testimony that, after discovering the bank ahead of him, there was an entire want of care on his part as to whether his friends and invited guests were injured or not. We must say that he was consciously indifferent to their rights or their welfare and, in view of the fact that he, himself, was also in the automobile, that he was likewise consciously indifferent to his own safety. To be consciously indifferent one must be conscious of the fact that he is indifferent at the time and upon the occasion in question, and unless we could say from the testimony in this case that Johnson knew beforehand that the embankment was ahead of him, which we cannot say, because it is not shown by the testimony, we must conclude that during the period of less than two seconds immediately preceding the accident he was consciously indifferent and that he had an entire want of care as to whether the accident occurred or not. The fact that he applied his brakes in a manner sufficiently violent to lock the wheels and skid the car a distance of sixty-three feet shows, we think, that within as short time as could be considered reasonably possible he did all he could to avoid the accident. Instead of showing an entire want of care or a conscious indifference as to the welfare of appellant and the other guests in his car, the testimony shows conclusively that at least immediately preceding the accident he exercised every possible effort to avoid it. If gross negligence is not shown during the period of time immediately preceding the accident and after appellee could have observed the embankment, then it could not exist in this case unless it may be said that appellee was guilty of gross negligence in driving the car at such a high rate of speed prior to the accident. That it was negligence to drive at such a high rate of speed as must have been attained by the car cannot be questioned, but under the holdings of our courts in the cases above cited and many others it cannot be said that driving at such a rate of speed, under the circumstances revealed by the record in this case, of itself, is gross negligence. The road over which the automobile traveled after reaching Gem Lake road was smooth and, as far as the evidence shows, there were no other vehicles traveling upon it. The record does not show any other condition or circumstance than those we have discussed which would indicate recklessness or other conduct that could be construed as gross negligence, and in our opinion the trial court was required by the rules of law governing the case to give to the jury a peremptory instruction to return a verdict in favor of appellees. Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022.

Under other propositions appellant assigns error of the court in his ruling on the pleadings and in excluding certain al-

460

leged expert testimony, but in the view we take of the case, they become immaterial in so far as this appeal is concerned, and we conceive of no benefit that could be derived from a discussion of them.

From what we have said it is evident that in our opinion appellant was not entitled to recover of either of the appellees and the court below did not err in giving to the jury a peremptory instruction to return a verdict in their favor. The judgment of the trial court will, therefore, be affirmed.