W. Graham WEBB, Jr., Appellant,

v.

Floyd L. KARSTEN et al., Appellees.

No. 13132.

Court of Civil Appeals of Texas.

Houston.

Dec. 19, 1957.

Thomas L. Blanton, Albany, for appellant.

Blakeley & Williams, Carey Williams, Houston, for appellees.

WERLEIN, Justice.

W. Graham Webb, Jr., and W. G. Webb brought this suit against Floyd L. Karsten, individually and in his capacity as administrator of the Estate of Floyd L. Karsten, Jr., deceased, and the estate of Robert C. Telschow and his widow as survivor of their community estate and the representative thereof, to recover damages growing out of the death of William Graham Webb, III, a minor, who was killed in a collision between a car allegedly driven by Floyd L. Karsten, Jr., deceased, and a car driven by Robert C. Telschow at the intersection of Inwood Drive and Timber Lane in River Oaks Addition to the City of Houston. The plaintiffs made Floyd L. Karsten individually a party-defendant in the suit al-

leging that he had furnished his son, Floyd L. Karsten, Jr., deceased, with a Nash-Healy Sport Convertible capable of being driven at a very high rate of speed, knowing that the said Floyd L. Karsten, Jr., was only 17 years of age and was an inexperienced, incapable and incompetent driver.

Plaintiffs alleged a number of grounds of negligence and gross negligence on the part of Floyd L. Karsten, Jr., proximately causing the collision in question. They also alleged various grounds of negligence on the part of the said Robert C. Telschow, which proximately caused the collision in question. They pleaded that William Graham Webb, III, was only 19 years of age at the time of his death, and that his father, W. Graham Webb, Jr., and his mother, Mrs. Frances, and his grandfather, W. G. Webb, are the only beneficiaries entitled to recover damages because of his death.

At the conclusion of plaintiffs' testimony, appellees moved the court for an instructed verdict in their favor on the grounds that:

1.  There was no evidence that deceased, Floyd L. Karsten, Jr., was driving the Nash-Healy automobile at the time of the collision in question, or, in the alternative, that any evidence tending to establish such fact was a mere speculative and conjectural conclusion, there being no more evidence than sufficient to raise a mere surmise or suspicion of the truth of such ultimate fact.

2.  There were neither allegations nor proof of acts or omissions on the part of Floyd L. Karsten, Jr., which could constitute gross negligence, even if he were driving the automobile.

3.  There was no actionable negligence on the part of Floyd L. Karsten in entrusting the automobile in question to his son, Floyd L. Karsten, Jr., in the absence of proof that Floyd L. Karsten, Jr., was guilty of gross negligence proximately causing

the death of the deceased, Floyd L. Karsten, Jr.

4. If the said Floyd L. Karsten, Jr., was guilty of gross negligence, plaintiffs' deceased was guilty of contributory negligence proximately causing his death as a matter of law in failing to avail himself of the opportunty afforded him to leave the car.

Upon suggestion of the court with reference to the procedure to be followed, appellees asked that the court withdraw the case from the jury and render judgment for appellees, which was accordingly done, over plaintiffs' objections and exceptions. Thereupon, plaintiffs dismissed the case as to the estate of Robert C. Telschow and his widow, Mrs. Pearl Telschow, as survivor of their community estate and the representative thereof. W. G. Webb, the grandfather of the deceased, William Graham Webb, III, stated in open court that he had no interest in the suit and he was therefore dismissed therefrom.

In due course, appellant, W. Graham Webb, Jr., perfected his appeal and this Court is now called upon to determine whether there was any evidence of probative force requiring that the case be submitted to the jury, taking into consideration the pleadings, testimony adduced at the trial and any testimony that may have been wrongfully excluded by the trial court. Appellant has assigned 17 points of error which he has grouped together for consideration of this Court. His first three points are directed especially at the court's action in withdrawing the case from the jury and rendering judgment for the appellees as a matter of law.

■ The law is well settled in this State that the jury are ordinarily the judges of the facts proved, the weight to be given to the testimony, and the credibility of the witnesses, and that the trial court is not justified in giving a peremptory instruction unless the evidence is so conclusive that reasonable minds cannot differ thereon.

See Rothchild Co. v. Moore, Tex.Com. App., 37 S.W.2d 121.

In the case of Thomas v. Postal Telegraph-Cable Co., Tex.Com.App., 65 S.W. 2d 282, it was said:

"Since the verdict was instructed in the district court for the defendant companies, we must view the evidence in its most favorable light for the Thomases. If there is any evidence in the record of probative force which would justify a finding in favor of the Thomases, the judgments of the two lower courts should be reversed and the cause remanded to the district court for a new trial."

See also Kleising v. Miller, Tex.Civ. App., 83 S.W.2d 732; Singleton v. Carmichael, Tex.Civ.App., 271 S.W.2d 324, ref. n. r. e.; Texas Employers' Ins. Association v. Boecker, Tex.Civ.App., 53 S.W. 2d 327, writ refused.

■ It is also well settled that in order to justify submission of the case to the jury, there must be some evidence of probative force, and that if there is no more evidence than sufficient to raise a mere surmise or suspicion of the truth of the ultimate fact, the case should not be submitted to the jury under the rule announced by the Supreme Court of this State in the case of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059. See also Seybold v. Johnson, Tex.Civ.App., 11 S.W.2d 399, writ dismissed.

We are called upon to determine first whether there was any evidence more than a mere surmise or suspicion that would warrant a jury in finding that Floyd L. Karsten, Jr., was driving the Nash-Healy automobile at the time of the fatal collision. The title to the car was in Floyd L. Karsten, Sr., who turned the car over to his son to use. The only evidence tending to establish in any way that Floyd L. Karsten, Jr., was driving the car in question was the speculative and conjectural conclusion of the investigating officer, J. H.

Sullins, who arrived at the scene of the accident some minutes after the collision. His opinion was based on his factual testimony that there was a long scratch or mark made by rubber on the turtleback of the Nash-Healy extending from behind the driver's seat in a diagonal direction toward the right rear of the car, which he thought was made by rubber of a color which matched the color of the rubber on the shoes of the boy whose body was behind the Nash-Healy car after the collision. It is unquestioned that the boy whose body was found behind the Nash-Healy was Floyd L. Karsten, Jr. This officer testified that the shoes worn by the Karsten boy were crepe-rubber-soled, the crepe-rubber being of a peculiar orange-yellow color, and that they were low-quarter sport shoes and did not in any way resemble a Wellington boot.

Officer Sullins further testified as follows:

"Q. Assuming, without admitting it officer, that Floyd Karsten, Jr., was in the middle of that seat prior to the collision, if his body went without turning sideways to the car that mark could have been made by his left heel draging there, could it not? I am not asking you to admit that is where he was. I am asking you if you assume he was in the middle, it could have been made that way, could it not? A. It could have been, I suppose. I don't know.

"Q. And if his body was turned sideways to the axis of the car and he was crossways, it could have been made by his right heel draging, could it not? A. I suppose so. I don't know how it happened."

It would, therefore, seem from the evidence of the mark on the turtleback, testified to by said officer, that the Karsten boy may or may not have been driving the car at the time of the collision. Under the Equal Inference Rule, as announced in such cases as Perren v. Baker Hotel of Dallas, Tex.Civ.App., 228 S.W.2d 311, and Heavy Haulers v. Nicholson, Tex.Civ.App., 277 S.W.2d 250, 254, decided by this Court, the evidence of Officer Sullins lacked the probative force to establish the ultimate fact that the Karsten boy was the driver of the Nash-Healy car. There was also testimony that the Karsten boy never owned any crepe-soled shoes in his life, and that he usually wore half-boots, or what are known as Wellington boots. This testimony is corroborated by the photographs taken at the scene of the accident showing a Wellington boot lying near the Karsten boy as he lay near the curb in his socks. In Heavy Haulers v. Nicholson, supra, this Court stated:

"Where circumstances are equally consistent with the existence and non-existence of an ultimate fact sought to be established, such circumstances are wanting in probative force as any evidence tending to establish the existence of the ultimate fact. Perren v. Baker Hotel of Dallas, Tex.Civ.App., 228 S.W.2d 311; General Accident Fire & Life Assurance Corporation v. Perry, Tex.Civ.App., 264 S.W.2d 198."

It is, therefore, the opinion of this Court that there was no evidence of sufficient probative force as to who was driving the Nash-Healy automobile on the occasion in question that would warrant submission of such issue to the jury.

It is undisputed that there were three boys in the Nash-Healy car at the time of the collision, namely: Floyd L. Karsten, Jr., William Graham Webb, III, and Peter Fondren Underwood. All three of these boys were killed. It is also undisputed that the Webb boy was the guest of the Karsten boy on the occasion in question, so that in order for there to be any recovery in this case it would have been necessary for the appellant to have established gross negligence on the part of the driver of the Nash-Healy automobile. If we assume that Floyd L. Karsten, Jr., was driving

such car at the time of the fatal collision, it then becomes necessary to determine whether there was sufficient evidence of probative force as to gross negligence on his part to warrant submission of such issue to the jury.

The accident occurred at about 11:50 a. m. on August 31, 1951, at the intersection of Inwood Drive and Timber Lane. One James Jefferies testified that he saw the Nash-Healy car at a time variously stated to be 5 minutes, 2 or 3 minutes, and 1½ to 3 minutes, before he heard the crash, at a point some two long blocks east of the intersection where the fatal collision subsequently occurred. At the time he saw the car it was being driven in an easterly direction, away from the intersection where the collision occurred. At this time it appeared that the Nash-Healy car was following a car with some girls in it, and that the occupants were laughing and talking and that the Nash-Healy was going at a speed of from 60 to 80 miles per hour. Jefferies testified that he saw the car turn into Larchmont Street on two wheels with a squealing of tires. The car driven by the girls continued in an easterly direction.

Edgar Moore, another witness, testified that when he first saw the Nash-Healy, it was traveling the last two blocks it traveled before the fatal collision at a speed up to 60 miles per hour and that he saw the collision happen. He further testified that the occupants of the Nash-Healy were laughing and talking and appeared to be having a good time and none of them appeared to be protesting the manner in which the car was being driven. Appellant, both in his original petition and in his first amended original petition, alleged that the guests in the car through politeness could not protest. This allegation is an admission that the deceased, William Graham Webb, III, did not protest.

The only pleaded ground of gross negligence on the part of the driver of the Nash-Healy, which could possibly have been established by the evidence, was excessive speed ranging from as high as an estimated 60 to 80 miles per hour some minutes before the collision, to 60 miles per hour at the time of the collision, in a residential district where the speed limit was 30 miles per hour.

In the case of Wood v. Orts, Tex.Civ. App., 182 S.W.2d 139, 140, no writ history, it was shown that the host driver "was driving his automobile at night at a rate of speed of at least seventy-five miles per hour on the left-hand shoulder of the paved highway for a distance of about 189 feet, and without keeping a proper lookout and without applying his brakes or slackening his speed, and without turning said automobile to the right, knocking down a row of five guard posts about ten inches in diameter and spaced ten feet apart and then went on to crash into the steel buttress of a bridge located on a straight highway, said posts and bridge being visible at night for a distance of from 200 to 300 yards." The Court of Civil Appeals, through Justice Murray, stated:

"Driving at an excessive rate of speed, failure to keep a proper lookout, driving on the left-hand side of the road, failure to apply the brakes and failure to slacken the speed, are all acts of ordinary negligence, and do not in themselves constitute reckless and heedless disregard of the rights of others. (As to speed) Mayer v. Johnson, Tex.Civ.App., 148 S.W.2d 454; Crosby v. Strain, Tex.Civ.App., 99 S.W.2d 659; Glassman v. Feldman, Tex.Civ.App., 106 S.W.2d 721; (as to failure to keep a proper lookout and failure to turn to the left) Linn v. Nored, Tex.Civ.App., 133 S.W.2d 234; Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022; (mere inadvertence or inattention is not gross negligence) Wright v. Carey, Tex.Civ.App., 169 S.W.2d 749.

\*　\*　\*　\*　\*　\*

" 'Gross negligence' is defined to mean an entire want of care which would raise a presumption of a conscious indifference to consequences. Mayer v. Johnson, supra."

See also Gill v. Minter, Tex.Civ.App., 233 S.W.2d 585, error refused.

In the case of Rogers v. Blake, 150 Tex. 373, 240 S.W.2d 1001, 1004, a guest case in which it was contended that the conscious failure to stop at a stop sign was gross negligence, our Supreme Court, in reversing the judgments of the trial court and the Court of Civil Appeals, stated:

"We think the fallacy of petitioner's reasoning is that she contends a conscious failure to stop at the stop sign; i. e., a conscious violation of the law requiring one to stop at the stop sign, constitutes gross negligence on the part of the respondent, whereas the law is that there must be a 'heedlessness and reckless disregard of the rights of others', which a conscious failure to stop, standing alone, does not show.

" * * * In our opinion, the evidence in the case at bar raises no more than a 'momentary thoughtlessness, inadvertence, or error of judgment' and does not meet the requirements of the law so as to constitute 'gross negligence' and a 'heedlessness or reckless disregard of the rights of others'."

See also Bullock v. Atlantic Refining Company, Tex.Civ.App., 289 S.W.2d 618, error refused, in which an instructed verdict in favor of the employer of the host driver was affirmed where the evidence indicated the driver going at a speed of 70 to 75 miles per hour swerved over to the left side of the road and ran head on into a truck approaching from the opposite direction, killing the driver and all his guests.

In the case of Mayer v. Johnson, Tex. Civ.App., 148 S.W.2d 454, 459, error dismissed, judgment correct, there was an appeal from a directed verdict for the defendant in a guest statute case. It was held that it must be shown that the host operator was conscious of the fact that he was indifferent to the rights and safety of his guests at the time of the negligent acts or omissions. In this case the young host driver turned off his lights several times at night and ran into an embankment. There was no proof that he knew the embankment was there. It was held that a verdict was properly directed for him by the trial court. The court said:

"Discussing the question of gross negligence, Judge Smedley, in delivering the opinion of the Supreme Court in Texas Pac. C. & O. Co. v. Robertson, supra [125 Tex. 4, 79 S.W.2d [830], 831, 98 A.L.R. 262], said: 'The person charged with the act or omission cannot be consciously indifferent to the rights or welfare of another unless he knows, or should know, that such another will probably be affected by the act or omission.' Applying that principle to the testimony in this case, in order to charge appellee, Johnson, Jr., with gross negligence, we are required to find from the testimony that, after discovering the bank ahead of him, there was an entire want of care on his part as to whether his friends and invited guests were injured or not. We must say that he was consciously indifferent to their rights or their welfare and, in view of the fact that he, himself, was also in the automobile, that he was likewise consciously indifferent to his own safety."

■ Appellees contend that excessive speed alone does not establish that consciousness on the part of the host operator of his own indifference to the rights and welfare of his guests, which the law requires in guest statute cases. We shall not undertake to pass upon such contention as an abstract proposition of law. In the in-

stant case, however, we are of the opinion that there is no evidence showing that the Karsten boy in driving 60 miles per hour at the time of the collision and immediately before was consciously indifferent to the safety and welfare of his guests and of himself. He and his teenage companions were having fun and did not realize or appreciate the danger of driving at such rate of speed. They were laughing as they drove by the witness Moore just one block from the point of collision. They waved at him and he waved back at them.

■ The court properly rendered judgment for appellees on the further ground that if the Karsten boy was in fact driving the car in question and was guilty of gross negligence, his invitee and guest, William Graham Webb, III, was guilty, as a matter of law, of contributory negligence proximately causing his own death. Appellant has admitted that his son made no protest as to the manner in which the car was being driven. Moreover, he had two opportunities to leave the car minutes before the collision. When the witness Jefferies first saw the car it was going between 60 and 80 miles per hour in an easterly direction on Inwood Drive. The car then made a sharp turn on Larchmont while still going at an excessive rate of speed. The deceased, William Graham Webb, III, knew that the car was being driven at an excessive rate of speed and he apparently not only acquiesced in it but seemingly enjoyed it, as testified to by witnesses who saw the boys laughing as they drove by. Edgar Moore, the only witness who saw the collision and the events immediately preceding it, and who was working at the southeast corner of the intersection of Timber Lane and Del Monte, just one block south of the intersection of Inwood and Timber Lane where the collision occurred, testified that he saw the Nash-Healy car going east on Chevy Chase, the next street south of Del Monte and one block from where the witness was standing. The car came to the intersection of Chevy Chase and Timber Lane and

stopped, as though the driver were trying to decide which way to go. He then started to turn right on Timber Lane and stopped again, and then backed up and turned left on Timber Lane. He then drove north on Timber Lane in the direction in which he was headed to the intersection of Timber Lane and Inwood, where the collision occurred.

Thus, the car was stopped at least twice immediately before proceeding two blocks north to the point of collision. At the times the car stopped all of the boys appeared to be conscious and in good health, according to the testimony of the witness Moore. If any of the boys had wanted to get out he had plenty of time and a chance to do so, according to this witness. There was no top on the car and the door was not over two or three feet from the ground, so that it would have been easy for any of the boys to have stepped out of the car and onto the ground. There was no testimony contradicting this witness, and his testimony was not questioned on cross-examination, nor was any testimony adduced at the trial that would throw doubt upon it. It was positive and unequivocal. Hence, if the car was in fact driven by the Karsten boy, and the speed at which he drove it at the time of and immediately before the collision was such as to convict him of gross negligence, then the guest, William Graham Webb, III, was guilty of contributory negligence, as a matter of law, in failing to take advantage of the opportunity afforded him to leave the car. The undisputed evidence actually shows that if the Nash-Healy had been driven at speeds ranging from 60 to 80 miles per hour, it was twice stopped just two blocks from the place of the collision, thereby giving any passenger in it at least two fair and reasonable opportunities to leave the car within less than one minute before and two blocks from the the collision.

In the case of Sargent v. Williams, 152 Tex. 413, 258 S.W.2d 787, and also in the case of Schiller v. Rice, 151 Tex. 116, 246

S.W.2d 607, 613, our Supreme Court held that ordinary contributory negligence is a complete defense to an action under the guest statute, Article 6701b, Vernon's Ann. Civ.St. In Schiller v. Rice, supra, the Supreme Court held that a guest, who after learning of the host's intoxicated condition, failed to take advantage of a reasonable opportunity to leave the automobile, was guilty of contributory negligence, barring recovery by the guest as a matter of law. We quote from the opinion of Justice Calvert, as follows:

> "We need not review in detail the cases cited by defendant. It may be safely and fairly asserted that they support the legal proposition that a plaintiff who voluntarily enters a vehicle with a driver known to the plaintiff to be intoxicated, or who, learning of the intoxicated condition of the driver after entering the vehicle, thereafter fails to leave it at the first fair and reasonable opportunity, will be denied a recovery. Some of the courts base the denial of a recovery on the contributory negligence of the guest, others on assumption of risk, and others on the volenti doctrine. But many of the courts say as did the Vermont court in the case of Packard v. Quesnel, supra [112 Vt. 175, 22 A.2d [164] 167]: 'We do not believe it important to classify this bar. The name to be applied to such conduct is of no great consequence. The result of the conduct is what counts and that result is preclusion from recovery.'"

In Sargent v. Williams, supra [152 Tex. 413, 258 S.W.2d 788], the Supreme Court held that a guest, who learns of the host-driver's incompetence or recklessness and refrains from leaving the vehicle when the opportunity affords itself, is guilty of contributory negligence as a matter of law, barring recovery by the guest. The Court stated:

> "We agree with the Court of Civil Appeals that the case is governed by our recent holdings in Schiller v. Rice [151 Tex. 116], 246 S.W.2d 607, to the effect that (a) ordinary contributory negligence is a defense to actions under our automobile guest statute; and (b) both the 'negligence' and 'contributory' elements of contributory negligence follow as a matter of law from the fact of the guest embarking on (or refraining, upon due opportunity, to disembark from) a trip with a driver knowing the latter to be drunk. That this 'self-exposure to risk' type of contributory negligence may also exist where the guest knowingly entrusts his fate to an incompetent or reckless driver is recognized. Walsh v. Dallas Railway & Terminal Co., 140 Tex. 385, 167 S.W.2d 1018, 1021; Restatement, Torts, Sec. 466, Clause (a), Comment e; Blashfield, Cyc. of Auto. Law and Practice, Sec. 2512 (Perm.Ed.)."

These cases are authority for the proposition that William Graham Webb, III, in failing to avail himself of a fair and reasonable opportunity to leave the car in question, after knowing that the driver thereof was driving the same at excessive rates of speed, was guilty of contributory negligence, as a matter of law. The fact that he was only 19 years of age is immaterial. In the case of Sargent v. Williams, supra, the plaintiffs were minor females 13 and 14 years of age, and yet were found guilty of contributory negligence, as a matter of law, for the same kind of conduct that William Graham Webb, III, was guilty of in the instant case, according to plaintiffs' own witness.

It is the opinion of this Court that the trial court did not err in rendering judgment in favor of appellee, Floyd L. Karsten, Sr., as to the independent ground of "negligent entrustment" alleged against him for the reason that there was no evidence that the Karsten boy was, as alleged

by appellant, inexperienced, reckless or incompetent, and for the further reason that there could be no recovery against the said Floyd L. Karsten, Sr., without proof of liability on the part of his son, Floyd L. Karsten, Jr. The testimony showed that the Karsten boy had gone to a driver's school, had passed the driving school examination before obtaining his license to drive. He had taken the regular examination for a State driver's license administered by the Highway Patrol. He had never received a traffic ticket, nor had he ever been involved in any other collision, according to the undisputed testimony. It was further shown by a witness who had driven trucks and heavy passenger cars and sports cars that the easiest vehicle to handle and the easiest to drive safely of the three was a sports car because of its great "roadability".

There can be no liability on the part of the said Floyd L. Karsten, Sr., for the further reason that the contributory negligence of the deceased, William Graham Webb, III, is clearly a defense to any independent ground of negligence alleged against the said Floyd L. Karsten, Sr., (See 30–B Tex.Jur., 301, Negligence, Sec. 89, and cases cited, and footnote 9).

We have carefully reviewed appellants' other points of error with respect to exclusion of certain testimony and statements that were offered in evidence, and find no merit in them. They are accordingly overruled. The statements were procured after the occurrence of the accident, and were clearly hearsay statements. Plaintiffs' Exhibit No. 1, being the police officer's accident report, in which it is stated that the driver of the Nash-Healy was Floyd Lewis Karsten, Jr., was properly excluded since it was based entirely upon hearsay or surmise.

The judgment of the trial court is affirmed.

BELL, C. J., not sitting.