C. L. KELLY, Jr., et al., Appellants,

v.

HAMM–TEX DISTRIBUTING COMPANY
et al., Appellees.

No. 3735.

Court of Civil Appeals of Texas.

Waco.

June 16, 1960.

Rehearing Denied July 29, 1960.

Robert Eikel, John L. Russell, Fred Parks, Fred A. Collins, Houston, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, Russell Talbott, Houston, for appellee.

McDONALD, Chief Justice.

This case is for damages arising out of serious personal injuries sustained by the minor plaintiff, Michael Kelly, on 18, July, 1955, at about 8:00 p. m., when the bicycle upon which he was riding was struck by defendant Hamm-Tex Distributing Company's truck (being driven by defendant Mathews) at the intersection of Richmond Road and Sixth Street in Bellaire, Harris County, Texas. At the time of the accident Mathews was proceeding in a northeasterly direction on Richmond, and Michael Kelly was proceeding in a southerly direction on Sixth Street. The bicycle was struck on its rear wheel on the south edge of the intersection, and it and the minor were thrown some 37 feet.

Trial was to a jury which, in answer to special issues, found:

1 & 2) Defendant's truck was operating at a rate of speed greater than 30 m. p. h., which was a proximate cause of the collision.

3 & 4) Defendant's driver failed to keep a proper lookout, which was a proximate cause of the collision.

5 & 6) Defendant's driver approached the intersection at an excessive rate of speed, which was a proximate cause of the collision.

7 & 8) Acquit defendants of additional alleged negligence.

9) Finds that the accident was not an unavoidable accident.

10 & 11) The damage issue for the minor plaintiff Michael Kelly, was answered in sections, and aggregates $50,300.

12) The damage issue for the minor plaintiff's mother and father aggregates $1,625.

13 & 14) Plaintiff, Michael Kelly, failed to keep a proper lookout, which was a proximate cause of the collision.

15) The collision occurred more than one-half hour after sunset.

16) The failure of plaintiff, Michael Kelly, to have on his bicycle a lighted lamp visible for 200 feet, was a proximate cause of the collision.

17) The failure of plaintiff, Michael Kelly, to have a lighted headlight on his bicycle was not negligence.

18) Unanswered.

19) Plaintiff, Michael Kelly, did not fail to stop before entering the intersection.

20 & 21) Unanswered.

22) The parents of Michael Kelly, in permitting him to operate his bicycle across Richmond Road on the occasion in question, were negligent.

23) Such was a proximate cause of the collision.

The Trial Court entered a take nothing judgment against the plaintiffs on the foregoing verdict overruling plaintiff's motion to disregard findings 13, 14, 16, 22 and 23.

Plaintiffs appeal, contending:

1) There is *no evidence* to sustain the jury's answers to issues 13 and 14 (finding that the minor plaintiff failed to keep a proper lookout, and that such was a proximate cause of the collision).

2) The jury's answers to issues 13 and 14 are against the great weight and preponderance of the evidence.

3) The Trial Court erred in not disregarding issue 16 because the jury found in answer to issue 17 that the failure to have a light was not negligence.

4) There is *no evidence* to support the jury's answers to issues 22 and 23, (finding that the minor's parents were negligent in permitting him to operate his bicycle on the occasion in question, and that such was a proximate cause of the collision).

5) The jury's answers to issues 22 and 23 are against the great weight and preponderance of the evidence.

**610**

We revert to plaintiffs' contentions 1 and 2. The jury found, in answer to issues 13 and 14, that the minor plaintiff, Michael Kelly, failed to keep a proper lookout, and that such was a proximate cause of the collision. The record before us discloses that the minor plaintiff was 13 years old; that he left his friend John Wood's house, with John Wood, to go swimming; that he and John Wood were on their bicycles; that it was one-half hour after sunset; that the minor plaintiff was in front; that John Wood was behind; that they were proceeding south on Sixth Street; that they were en route to cross Richmond; that they could see about 1½ blocks; that there were no traffic signals at the intersection of Sixth and Richmond.

Sixth St.

Richmond Rd.

N

Schematic Diagram

The only witnesses whose testimony reflects on the character of lookout that Michael Kelly maintained or its causation of the accident are the minor plaintiff himself, John Wood, Gage, and Mathews. The minor plaintiff testified as follows:

"Q. When you came to Richmond Road what did you do? A. I stopped and put my foot down on the pavement.

"Q. What next then did you do? A. I looked both ways for the cars approaching from either direction, and then the car on the other side of Richmond Road that was stopped made his turn and went on up the road. I looked both ways again and went on across the street.

"Q. Now, Mike, you say just before you started across and after this car had turned left and was going west on Richmond, that you again looked both ways for traffic? A. Yes, I did.

"Q. And did you see any traffic? A. No, sir.

"Q. You didn't see this truck that you subsequently had the collision with? A. No, sir."

The witness John Wood testified thus:

"Q. Tell us what, if anything, Michael did when he reached Rich-

mond? A. Well, we stopped. I saw him put his foot down and then he started on across."

The witness Gage was driving on Sixth Street going north, and stopped at Richmond to let traffic pass. After he stopped he looked across the intersection and saw the minor plaintiff waiting for traffic to pass. He testified:

"Q. Did you observe a young boy stopped over there at that time? A. Yes, sir.

"Q. What was he doing when you saw him while you were stopped on the south side of Richmond Road at Sixth Street? A. They were waiting for traffic. They were stopped."

Gage then turned to his left (Southeast) on Richmond Road. The truck passed him traveling southwest very fast and in just a short time the collision occurred. Mathews, the driver of defendant's truck, testified that the reason he did not see Michael was because of oncoming traffic between them.

Appellees, in their brief, contend that there is direct testimony from the witness Wood, that Michael did not so much as turn his head, as he must of necessity do to see to his right.

We are not in accord with this view of Wood's testimony.

We quote the testimony on which defendants rely:

"Q. * * * Now, when he got to Richmond you were—you had been about twenty feet behind him? A. Yes, sir.

"Q. And that's the distance you had been traveling behind him all along? A. Yes, sir.

"Q. Now, then before you got up to him he had. put his foot down and stopped? A. Yes, sir.

"Q. And then started on across? A. Yes, sir.

"Q. He had done all of that before you got up to him? A. Yes, sir.

"Q. Did you see anything else that he did at that time when he put his foot down and stopped? Did he do anything else? A. No, sir, not that I recall.

"Q. Did you see him do anything else? A. No, sir, not that I remember."

First of all, the witness Wood, (who was 13 years old at the time of the accident, and 16 at the time of the trial) was some 20 feet behind Michael, and owing to the fact that it was about 30 minutes after sunset, the witness was not in a position to see exactly what Michael was doing, and the witness could not know with any degree of accuracy whether Michael glanced or looked to his right or to his left to observe the traffic conditions at the street intersection. Moreover, we must bear in mind that counsel's questions to the witness were very general as to what else he saw Michael do. Bearing in mind that the witness is being cross-examined, there is nothing in the general questions to indicate to the witness exactly what counsel had in mind when he asked him: "Did you see anything else that he did at that time when he put his foot down and stopped? Did he do anything else?" The witness was not specifically asked whether he saw Michael glance or look to his right or to his left. Michael had stopped at the intersection. He had put his foot down. As we understand the record, there is an absence of any testimony to the effect that there was any traffic on Sixth Street that interfered in anywise with Michael's vision or the line of traffic he was in, having in mind the direction in which he was traveling. So, there was no occasion for Michael to come to a complete stop and put his foot down if he had not been watching for the traffic on Richmond Road.

Gage testified to the fact that he was traveling north on Sixth Street, and had stopped at the intersection of Richmond Road, and saw Michael stop at the inter-

section and put his foot down; that Gage then turned to his left and crossed into Richmond Road and proceeded west; and Michael was stopped waiting for traffic to clear; and waited for Gage to make his left turn before he proceeded. The foregoing is a strong circumstance in Michael's favor and is uncontradicted. So, the only reason that Michael had or could have had for bringing his bicycle to a complete stop and putting his foot down was to observe the traffic on Richmond Road, in order to determine whether or not he could cross with safety. Did Michael keep a proper lookout, and did he use ordinary care? We think the great weight of the testimony, under all the facts and surrounding circumstances, preponderate in his favor. Certainly he thought he could cross the intersection with safety or he would not have started across. The rate of speed he was traveling at the time he crossed the intersection is not shown, but it is without dispute that he was almost out of the intersection when his rear wheel was struck by the truck which was traveling at a high, excessive and negligent rate of speed. We think the evidence, under all the facts and surrounding circumstances, clearly demonstrates that Michael had the right-of-way and that but for the unlawful conduct on the part of the driver of the truck (which Michael was not required to anticipate) the rear wheel of his bicycle would not have been struck, and he would not have suffered the resulting injuries.

It follows that we think there is no direct evidence that the minor plaintiff failed to keep a proper lookout, nor that the lookout he kept was the proximate cause of the accident.

 It is the duty of one about to enter an intersection not only to look, but to observe in a careful and intelligent manner, the traffic and general situation at and in the vicinity of the intersection, including the speed and proximity of vehicles approaching from either direction. Although the one entering the intersection is not required to anticipate negligent or unlawful conduct on the part of others, he is not entitled to close his eyes to that which is plainly visible, and which would have been observed by a person of ordinary prudence, similarly situated. Lynch v. Ricketts, Tex., 314 S.W.2d 273. The standards of care for children less than 14 years old are not as great as for adults. Rudes v. Gottschalk, Tex., 324 S.W.2d 201.

The minor plaintiff testified that when he reached Richmond he stopped his bicycle, putting his foot to the ground, and looked both ways and waited for traffic to pass; that he looked both ways again and, seeing no approaching traffic, proceeded to cross. John Wood, who was on the bicycle some 15 or 20 feet behind the minor plaintiff, and the witness Gage, corroborated the foregoing. There is evidence that there were cars between the truck and the minor plaintiff which prevented the truck's being seen. The foregoing stands in the record uncontradicted, and as noted, there is no direct evidence to the effect that the minor plaintiff did not keep a proper lookout.

Applying the applicable rules, supra, to this record as a whole, we are unable to say that there is no evidence or circumstances in support of the jury's findings in answer to issues 13 and 14. However, it is our view, and we so hold, that, bearing in mind the age of the minor plaintiff, together with all of the surrounding facts and circumstances existing immediately before and at the time of the accident, we are of the firm view that the jury's conviction of the minor plaintiff of failing to keep a proper lookout proximately causing the collision, is clearly wrong and against the great weight and preponderance of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

Plaintiffs' 2nd contention is that the Trial Court should have disregarded issue 16. In issue 16, the jury found that the failure of the minor plaintiff to have on his bicycle a lighted lamp visible for 200 feet, was a proximate cause of the collision.

 The Statute (Article 798, Vernon's Ann. Penal Code) requires that a bicycle have a light visible for 200 feet from one-half hour after sunset. For an adult, the violation of a statute would constitute negligence per se. The standard for a child is different. The minor plaintiff herein was 13 years of age. The jury, in answer to issue 17, found that failure of the minor plaintiff to have any sort of lighted headlight was not negligence. We think under the circumstances that such finding precludes issue 16 from convicting the minor plaintiff of negligence per se. See Rudes v. Gottschalk, Tex., 324 S.W.2d 201. Moreover, Larsen v. Halliburton Oil Well Cementing Co., Tex.Civ.App., 105 S.W.2d 368, W/E Ref., holds that Art. 6701(c) R.C.S., Secs. 2(c), 27 and 28, expressly repealed Art. 798 of the Penal Code.

Plaintiffs' 4th and 5th contentions are that there is no evidence or insufficient evidence to sustain the jury's answers to issues 22 and 23. (That the parents of the minor plaintiff were negligent in permitting him to operate his bicycle across Richmond Road on the occasion in question; and that such was a proximate cause of the collision).

 The minor plaintiff lived with his parents on Sixth Street about a block and a half from Richmond Road. He had ridden his bicycle to and from school and crossing Richmond. There was no evidence that there was anything so extraordinary about living in this area that made it customary for children not to have bicycles or for their parents to forbid them to ride them on the streets in question. We think these findings to be against the great weight and preponderance of the evidence. See: 30B Tex.Jur., p. 190, 192; In re King's Estate, supra. Defendants contend that plaintiffs did not raise the foregoing point in their Motion for New Trial in the Trial Court. We think the language of both plaintiffs' Motion for New Trial and Amended Motion for New Trial broad enough to raise such point.

Plaintiffs' contentions 2, 3 and 5 are sustained. The judgment of the Trial Court is reversed and the cause remanded.

Reversed and remanded.

WILSON, J., not concurring.