Arthur S. DORAN, individually and as Next Friend for Phillip Doran, Appellant,

v.

Marsha Lynn EATON et al., Appellees.

No. 11155.

Court of Civil Appeals of Texas.

Austin.

Feb. 26, 1964.

Rehearing Denied March 18, 1964.

Bates & Brock, David J. Nagle, Houston, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellees.

PHILLIPS, Justice.

This cause of action arose out of an automobile-pedestrian accident in which Phillip Doran, a minor 8½ years old at the time of the accident, was struck by an automobile driven by Marsha Lynn Eaton, also a minor 15 years 8 months old at the time of

the accident. The automobile that Marsha Lynn Eaton was driving at the time was owned by Mrs. Pat Billingsley. Suit against the driver of the car and the owner thereof was brought by Arthur Doran, individually and as next friend for his son, Phillip. R. T. Eaton, Jr., father of the driver, was appointed by the court as guardian ad litem for his minor daughter, Marsha Lynn Eaton. Mrs. Billingsley's husband, Mr. William H. Billingsley, was joined as a defendant.

After the plaintiff had presented his case, the trial court granted an interlocutory order and judgment, severing plaintiff's cause against Mrs. Billingsley, the owner of the car, and her husband and ordered that plaintiff take nothing as to these defendants.

The jury returned findings that both the pedestrian plaintiff and driver defendant of the car were negligent and that the negligence of each was the proximate cause of the accident. On this verdict the court entered judgment that plaintiff take nothing. From this judgment plaintiff has duly perfected his appeal to this Court.

The judgment of the trial court is affirmed.

Because of the number of parties involved, the parties will be referred to in this opinion by their position in the court below or by their proper names.

We will consider plaintiff's points of error two through six first as they are grouped together and because together they raise the issues of contributory negligence, which issues determine this case. These points are that the trial court erred in overruling plaintiff's motion for judgment non obstante veredicto, that there was either no evidence or insufficient evidence to support the issues that the minor plaintiff failed to keep a proper lookout and the issues as to proximate cause relating to each issue as to proper lookout.

The accident in question occurred on a bridge on Buffalo Speedway in Houston, Harris County, Texas, between 3:30 and 4 P.M. on a bright, clear afternoon. Buffalo Speedway extends north and south, consists of two traffic lanes running north and two running south divided by an esplanade. The speedway is straight and level and there are no obstructions near the part of the speedway in question to obstruct one's vision in any direction. Just before the accident, the minor plaintiff was located on the east edge of a bridge on the speedway. There was another minor boy with him. A third minor boy was located on the west side along the edge of the bridge. The defendant driver, Marsha Eaton, was proceeding south in Mrs. Billingsley's car at what the evidence shows to be approximately twenty miles an hour. The minor boy who had been with the plaintiff on the east side of the speedway and on the edge of the bridge, ran across the speedway over to the minor who was located on the west side of the speedway and the plaintiff followed at a run some six feet behind him. Before plaintiff had run across the southbound lanes, he was struck by the car driven by defendant Marsha Eaton.

At the time of the accident there was an auto driven by a Mrs. Neyland headed north on the speedway. Mrs. Neyland saw the accident. Mrs. Neyland stopped immediately and rendered aid to the fallen plaintiff until help arrived. Mrs. Neyland testified that she had seen the auto driven by the defendant Eaton from the time that it had turned onto the speedway some two blocks north of the bridge where the accident occurred. There were no other autos close to the scene of the accident.

Plaintiff contends that any findings of his failure to keep a proper lookout must be set aside as there was no direct evidence that he so failed to keep a proper lookout. We cannot agree with this contention and the cases cited by the plaintiff do not so hold.

Kelly v. Hamm, Tex.Civ.App., 337 S.W. 2d 608, writ ref. n. r. e., cited by plaintiff does not support plaintiff's contention but

holds that even where the jury had found that minor plaintiff had failed to keep a proper lookout, the preponderance of the evidence was that he had kept a proper lookout. The court noted that there was no direct evidence that he had not kept a proper lookout and reversed and remanded the case for a new trial.

In Blunt v. H. G. Berning, Inc., Tex.Civ. App., 211 S.W.2d 773, writ refused, a minor was struck while crossing a street. The minor did not testify but her mother was allowed to testify that the child had stated that she had not seen the truck coming. There were two other witnesses to the accident but they could not say whether or not the child had stopped before crossing or had failed to look in both directions before attempting to cross. Even so, the jury found that (issue 9) the child failed to stop before attempting to cross, failed (issue 10) to keep a lookout for defendant's truck; and (issue 11) failed to look in both directions before attempting to cross. The court in concerning itself only with the failure of the child to keep a proper lookout stated:

"The law very clearly imposes upon each and every person proceeding along or across a public highway or street the duty of maintaining a 'proper lookout' for his own safety, the term importing such lookout as a person of ordinary prudence would have kept under the same or similar circumstances; in the case at bar and court charge the jury being further instructed that ordinary care when referring to plaintiff 'means that degree of care which would be used by a person of ordinary prudence, of Donnie Faye Blunt's age, experience, capacity, intelligence and discretion * * *.' "

In affirming the jury's finding that the minor had failed to keep a proper lookout the court stated the law as follows:

"Otherwise stated, defensive issue No. 10, on lookout, presenting, as it

does, the question of whether a reasonably prudent child of plaintiff's age, experience, capacity, intelligence and education would have acted differently under the same or similar circumstances, was for determination by the jury; and the court's judgment in consequence of findings adverse to a recovery must be affirmed."

In Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273, the Texas Supreme Court held that negligence and causation, like any other ultimate fact, may be established by circumstantial as well as direct evidence. That the jury is thus not only the judge of the facts and circumstances proven but may also draw reasonable inferences and deductions from the evidence adduced before it.

The issue on lookout presented to the jury in the case at bar was framed substantially as that in the Blunt case, above, and the jury had evidence of probative value from the facts and circumstances proven and the reasonable inferences and deductions drawn therefrom to find that the plaintiff had failed to keep a proper lookout.

Plaintiff assigns error to the trial court in entering an interlocutory take nothing judgment in favor of defendants Mrs. Pat Billingsley, the owner of the car, and her husband. Plaintiff contends that the defendant driver of the car, Miss Eaton, had a nearsighted eye condition for which she had to wear prescription glasses, that she had special sun glasses to correct this nearsightedness, that it was necessary to wear glasses while driving, that defendant Billingsley knew that defendant driver Miss Eaton had to wear glasses to see well at a distance, that defendant Billingsley never cautioned defendant driver Eaton to wear her glasses while driving their car, that this was negligence and the proximate cause of the accident. There is evidence that defendant Eaton was trying to put on her glasses at the time of the accident and had not seen the minor plaintiff.

■ Due to the fact that the jury found the minor plaintiff to have been contributorily negligent, it is not necessary for the purpose of this opinion to decide whether or not the plaintiff's pleadings and the evidence adduced at the trial were sufficient to raise the issue of negligent entrustment. Contributory negligence is a defense to negligent entrustment. Webb v. Karsten, Tex. Civ.App., 308 S.W.2d 114, Hardage v. Rouly, Tex.Civ.App., 349 S.W.2d 616, writ ref. n. r. e.

■ Plaintiff assigns error to the jury's finding that plaintiff had incurred $1,000.00 in damages for mental pain and anguish plus $1,635.25 for medical and hospital bills and that such finding was manifestly inadequate and unjust. Again we point out that the finding of contributory negligence on the part of the minor plaintiff is a bar to damages, thus we need not consider whether the awards were inadequate. Southern Pine Lumber Company v. Andrade, Tex.Com. App., 132 Tex. 372, 124 S.W.2d 334, opinion adopted by Supreme Court.

Plaintiff maintains that the trial court erred in failing to grant a new trial because of jury misconduct when Juror Stephens and other members of the jury openly agreed that Juror Stephens would vote for $1,000.00 damages in answer to special issue No. 11 in return for other jurors answering "we do" to special issues 8 and 9 or the issues on contributory negligence.

The trial court held a hearing on plaintiff's motion for new trial and testimony was taken. Plaintiff contends that the evidence given by Jurors Kebodeaux, Gilbert and Carmichael was such that the case should be remanded for new trial. We cannot agree.

Juror Kebodeaux when asked about his discussion with Juror Stephens concerning his vote answered:

"Yes, sir. We voted eleven to one on the amount in the settlement, and Mr. Stephens was the one individual that voted differently. He said that he would not change his mind unless we agreed to change ours on this other issue; that the child was partly in fault. The rest of us compromised then, and speaking for myself I personally compromised in that one issue, not knowing the end results, what it would be."

Juror Gilbert stated:

"Well, he indicated by his talk to me that he thought no child, any child, should be out on the street, and if they should be injured, while they were on the street, they should not be entitled to collect damages."

Juror Carmichael testified as follows:

"Immediately after we got in the deliberation room, we were confronted with the opinion of this Mr. Stephens that he felt that the child had no right as a child to be confronted, actually, in court, that he had no right as a child to be in court on behalf of this accident."

Jurors Kebodeaux, Gilbert and Carmichael further testified to changing their vote on the questions of proper lookout on the part of the plaintiff and the related issue of proximate cause in turn for Juror Stephens changing his vote on the damage issues and agreeing to vote for the amount of damages found.

Juror Stephens categorically denied the above mentioned charges and Juror Anderson, the foreman, also denied that any misconduct occurred.

■ At the conclusion of the testimony on this motion, the trial court denied the motion. There are no findings of fact or conclusions of law before us so all reasonable intendments must be resolved in favor of the judgment. We hold that there was sufficient evidence for the trial court to have ruled as he did.

■ From the statements quoted above it was just as reasonable for the trial judge

to have concluded that Juror Stephens had very strong convictions concerning the contributory negligence on the part of the plaintiff because of his conduct on the particular day and in the particular place that the accident occurred, as it would have been for him to have concluded, as urged by plaintiff, that Juror Stephens was opposed to any child collecting damages from any accident such as this. The former view would have been a reasonable conclusion to be drawn from the facts presented at the trial, the latter would have been an unreasonable bias. As to any trading that may have occurred, there was conflicting testimony and the trial court found that there had been no misconduct in this regard. The trial court has the same latitude in passing upon the evidence offered on the hearing on a motion for new trial as to the credibility of the witnesses and of the weight to be given their testimony, as a jury has with regard to witnesses heard upon the original trial. Bradley v. Texas & P. Ry. Co., Tex.Com.App., 1 S.W.2d 861, opinion adopted by Supreme Court.

The judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice (dissenting).

A Trial Judge in granting or refusing a motion for a new trial exercises judicial discretion. 41 Tex.Jur.2d, New Trial, Sec. 106, p. 255. It is my opinion that the Trial Judge improperly exercised his discretion in denying appellant a new trial based on the misconduct of juror, Thomas N. Stephens.

Rule 327, Texas Rules of Civil Procedure, provides, in part, that one ground for a motion for a new trial is that "a juror gave an erroneous or incorrect answer on voir dire examination."

Sec. 4 of Art. 2134, Vernon's Ann.Civ.St., provides that, "Any person who has a bias or prejudice in favor of or against either of the parties" is disqualified to sit as a juror. In construing this statute the Supreme Court in Compton v. Henrie, 364 S.W.2d 179, stated:

"Had it been established that Fugate was biased or prejudiced against this type of suit, Fugate would be disqualified from serving on this jury. It is well settled in this state that the statutory disqualification of bias or prejudice extends not only to the litigant personally, but to the subject matter of the litigation as well. * * * In cases involving juror disqualification the Complainant need not establish that probable injury resulted therefrom before a new trial may be granted."

It is my opinion that juror Stephens violated Rule 327 in the particular above noted and that he was disqualified under Sec. 4 of Art. 2134, such violation and disqualification being shown by the overwhelming weight and preponderance of the testimony and that a presumed contrary finding by the Trial Judge is clearly wrong, manifestly unjust and an abuse of judicial discretion.

Juror, Mr. Donald Keith Kebodeaux, testified on the new trial hearing:

"Q * * * Well, first of all, let me ask you about the time when I questioned you before you got into the jury room and were selected on the Jury.

"Did you hear me ask whether any of the jurors had a bias or prejudice against the type of case where a child had been injured by a car while the child was on the street?

"A There didn't seem to be any prejudice at the time.

"Q Well, my question was, though, sir: Did you hear me ask that question of all the jurors?

"A Yes, sir; I did hear you ask those questions.

"Q  At the time, although there was no reporter to take it down, did any juror answer that he did have a preconceived idea about the way the parties' rights ought to be straightened out?

"A  No.

"Q  There wasn't anybody who answered?

"A  Right.

"Q  Now, when you got into the jury room, Mr. Kebodeaux, did any of the jurors make a statement that no child on any street who was injured had a right to recover damages?

"A  Yes, sir.

"Q  Can you tell me, if you know, the name of that juror?

"A  That was Mr. Stephens.

\*    \*    \*    \*    \*    \*

"Q  Did you hear Juror Stephens make a statement as to whether or not any child should recover any damages if they were injured while on a street?

"A  Yes, sir; I did.

"Q  Can you tell me what statement you heard him make?

"A  Mr. Stephens stated that any child on the street was responsible for being on the street and that they shouldn't collect any damages at all.  He stated—he meant any child on any street.

"Q  Is this the way you took his statement to mean?

"A  Yes, sir.

\*    \*    \*    \*    \*    \*

"THE COURT: Yes, sir.  What he [Stephens] did or what he said.

"THE WITNESS: Well, he stated soon after he got in the jury room that he felt the child shouldn't collect any damages because of the previous statement that I made, that any child on the street was responsible; that children shouldn't be on the street at all.

\*    \*    \*    \*    \*    \*

"Q  Can you tell me generally what the vote was on all of the issues and how you were divided in the jury room in terms of numbers?

"A  It was about eleven to one, with the exception of one vote, which was ten to two, I believe.

"Q  And who was the one vote that was—

"A  Mr. Stephens.

"Q  In all of the deliberations except on one issue, it was eleven to one?

"A  Except on one issue, where it was ten to two.  Mr. Stephens was the different party."

On cross examination this juror testified:

"Q  Now, Mr. Kebodeaux, wasn't it the argument of Mr. Stephens that it was because of Phillip crossing the Buffalo Speedway, a busy street, at the place where he was crossing, that caused him to believe that Phillip was at fault on this accident?

"Wasn't that what he was arguing to you and to the others?

"A  No, sir; it wasn't.

\*    \*    \*    \*    \*    \*

"Q  Mr. Stephens wasn't the only person talking in the jury room.  Was there a full and complete discussion by most of the jurors?

"A  Yes, sir.  He dominated the conversation, though I would say."

On re-direct examination he testified:

"Q  Did Mr. Stephens ever bang on the table or do anything unusual

in the jury room that you could tell us about?

"A   He banged on the table."

Excluded by the Trial Court, but shown by bill of exceptions is the following testimony by Mr. Kebodeaux:

"Q   By the conduct of Juror Stephens in the jury room in this trial, were you able to form an opinion as to whether or not Juror Stephens was reflecting a bias or attitude he carried into this trial and into this jury box, or whether his answers to the issues were based on his view of the evidence?   In all fairness to him, now.

"A   In all fairness, I felt that he was prejudiced prior to this case, with the statement that he made about any child being on the street, that is, hit on the street, that they are at fault and a person saying something like that, you can't reason with him.   I couldn't reason with him, and no one else could.   I felt that a man would definitely be prejudiced to make a statement like that, that any child that was hit on a street, they are at fault; they shoudn't be in the street.

"Q   All right, sir."

Mr. Dickie Gilbert, a juror, testified:

"Q   * * *   May I ask, sir, whether or not you heard Juror Stephens make a statement concerning the rights of a child upon any street?

"A   Yes, I did.

"Q   Will you tell the Court and us what you heard Mr. Stephens say about that?

"A   Well, he indicated by his talk to me that he thought no child, any child should be out on the street, and if they should be injured, while they were on the street, they

should not be entitled to collect damages.

*   *   *   *   *   *

"Q   Well, in order to be sure I understand you and the Court does, too, Mr. Gilbert, would you tell us as closely as you can the actual words Mr. Stephens used?

"A   Well, he said that he didn't think that any child playing on the street should be entitled to collect damages if they were injured while doing such, as well as I can recollect.

*   *   *   *   *   *

"Q   Did he discuss with you any of the facts in the case, the fact that this was Buffalo Speedway, a busy street?   Did Mr. Stephens make any comment about that?

"A   He made comment, not directly to me, now, but he did make a comment that—I don't remember any street being designated.   He just said that any child on any street, as well as I remember.

"Q   Did you hear him say anything about this being Buffalo Speedway, a busy street?

"A   No, sir.   I don't recall him mentioning a street at all.

"Q   Did he mention anything about this being on a bridge, where the little boys were crossing?   Did he mention that?

"A   No, sir.   He may have mentioned it sometime during the trial, but the point I am bringing out is that he did make a statement that any child on any street shouldn't be allowed to collect damages."

By bill of exceptions it is shown that Juror Stephens stated while the jury was deliberating:

"A   Yes, the statement he made that he didn't think that any child

should be allowed to play on any street and if they were injured while doing so, they should not be allowed to collect any damages."

Juror Kenneth D. Carmichael testified:

"Q   Tell us what statements you heard, as best you remember.

"A   Immediately after we got in the deliberation room, we were confronted with the opinion of this Mr. Stephens that he felt that the child had no right to be up there; that he had no right as a child to be confronted, actually, in Court, that he had no right as a child to be in Court on behalf of this accident.

"Q   *   *   *   First of all, let me ask you: Do you remember the issues that were concerned?

"A   Yes, it was the negligence on the part of Marsha Lynn Eaton. I believe we started out with the first issue, and we saw we was having difficulty there. I believe the vote was eleven to one, if I recall, that she was negligent; and immediately he voiced his opinion that he wasn't going to hang a rap, I believe is his words—that he wasn't going to declare her guilty or negligent. Of course, that was all based on his opinion that the child had no right in Court and so forth and so on, the way I understood it.

*   *   *   *   *   *

"When we got to the 8th Issue about the negligence on the part of the boy, I believe the vote was ten to two.

"Then, between us, all the way through, prevailing through all of this, he said that he would not give a penny or any money at all to the boy; that he had no right to it. He said the child had no right to be in the road, that he shouldn't, so forth and so on, and in this manner."

Juror Mr. Thomas N. Stephens testified for appellee as follows:

"Q   Did you enter into the jury room with your mind made up that you were going to answer all of the issues contrary to Phillip Doran, and in favor of Miss Eaton?

"A   Absolutely not.

"Q   Did you hear my question in the voir dire, or the discussion to the Jury Panel before you were chosen, asking whether you had any feeling about a boy who was injured on the street and I explained the facts of this accident to you?

"A   I have no feelings about that.

"Q   Did you hear my question, sir?

"A   Yes. I said I had no feelings.

"Q   You did not raise your hand in response to that question, saying you did have any feeling against that at all?

"A   I did not."

Jury Foreman W. T. Anderson testified:

"Q   Did you ever hear Mr. Stephens, one of the jurors, saying anything about no child having a right to be in Court?

"Did you ever hear any such statement as that, Mr. Anderson?

"A   Well, I couldn't truthfully say. I mean, it is kind of foggy. From all the testimony that went on, it is hard to say; and it has been some time ago.

"Q You can't tell us just what statements were made or were not made.

"Is that what you are telling us?

"A Right."

On cross examination Mr. Anderson testified:

"Q If I remember you correctly, Mr. Anderson, you say you cannot truthfully say whether Mr. Stephens made a statement that any child in the position of Phillip Doran ought to recover any damages if they were injured?

"A It was something to that nature; yes, sir.

"Q You did hear him saying something about that?

"A In a way that he left the impression that he wasn't to award any child or award him any money of any kind."

Juror Stephens originally voted "no" to the damage issue when it was undisputed that there were damages; he originally voted "no" to issue No. I inquiring if Marsha Lynn Eaton kept a proper lookout and was the only juror so voting when the evidence of Miss Eaton was that she did not see the Doran boy before the impact between him and her car. The boy had crossed two traffic lanes before he was struck by the Eaton car. It is obvious that she kept no proper lookout.

The actions of Mr. Stephens convince me that he was prejudiced against this boy. His words, as attributed to him by three of his fellow jurors, and denied by no one but himself, confirm his prejudice.

Eight and one half year old Phillip Doran may not have any right to recover for damages from injuries sustained by him when he was struck by a Thunderbird car driven by fifteen year old Miss Marsha Eaton, but he should have his right to recover determined by a fair and impartial jury. This right, in my opinion, has been denied him. I would remand this case. I therefore, respectfully dissent from the majority opinion.