Janice K. VANDERBURG, Appellant,

v.

Larry Wayne GARRETT, Appellee.

No. 6041.

Court of Civil Appeals of Texas.

El Paso.

July 2, 1969.

Warren Burnett, Richard J. Clarkson, Odessa, for appellant.

Stubbeman, McRae, Sealy & Laughlin, Charles Tighe, Midland, for appellee.

OPINION

FRASER, Chief Justice.

This is a suit for damages for personal injuries by appellant, a guest in the car driven by appellee. The trial court granted appellee's motion for summary judgment.

Appellant presents one point of error divided into two parts, as follows:

"POINT OF ERROR

"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST APPELLANT FOR THE REASON THAT THERE WAS EVIDENCE WHICH, WHEN VIEWED IN THE LIGHT MOST FAVORABLE TO APPELLANT, RAISED MATERIAL ISSUES OF FACT AND FROM WHICH A JURY MIGHT REASONABLY HAVE CONCLUDED THAT:

"(I) APPELLEE WAS GROSSLY NEGLIGENT AND SUCH NEGLIGENCE WAS A PROXIMATE CAUSE OF THE INJURIES OF APPELLANT JANICE K. VANDERBURG; AND

"(II) THAT JANICE K. VANDERBURG HAD NOT ASSUMED THE RISK OF THOSE INJURIES."

In considering this case we have tried to follow the rules applicable to summary judgment, viewing all the evidence in the light most favorable to the party against whom the judgment was granted and disregarding the conflicts in the testimony, and indulging in favor of the appealing party every intendment reasonably deductible from the evidence.

It appears from the record that plaintiff-appellant, an unmarried girl of 18 or 19 years of age, received a call at her home from defendant-appellee about 8:30 in the evening asking her to go riding. She consented and appellee came to her home, visited for a few minutes with her father and mother, and then drove off with appellant. After about an hour or more of driving around, the accident occurred. According to the affidavit of an eye witness, appellee's car crashed through a barricade across South Crane Street which had three flashing lights on top of it. After passing some 44 feet beyond the barricade, the automobile driven by appellee struck a piece of road equipment owned by Border Construction Company, thus causing the injuries to appellant.

Appellee bases his motion for summary judgment on the contention that appellant failed to take advantage of the fair and reasonable opportunity to leave the car after she had seen the defendant drinking on several occasions while driving or stopped, had asked him to let her drive, and had asked him to take her home, because she was concerned by his erratic behavior and reckless driving of the vehicle. The appellee does not deny that he had been drinking and got thoroughly drunk, stating that he had six beers on the way home from work, got cleaned up, and then called appellant. He admits having had half of a fifth of whiskey while with appellant and that he mixed it with coke; and in answer to a question in his deposition, he admitted that he got real drunk all of a sudden.

The testimony shows that the couple went directly from her home to a place called the Speedway, a place where you can pull up and get service while you sit in the car. Appellant testified that he had a coke in a bottle and was pouring it out and putting in an alcoholic beverage and drinking same. She also testified that he was drinking on the way from her home to the Speedway, because he had a coke, and she presumed he was drinking something; that she was very definite at the Speedway that he was pouring part of the coke out and putting some whiskey in it. She then testified that she asked him to let her drive because she didn't like to drive with anyone that had been drinking, but he refused and said he could handle it all right, or something to that effect. From the Speedway the couple rode around a while and finally went to Cabell's Minit Market on 42nd Street, and appellant testified that appellee got a coke and poured out half of it and put some of what alcoholic beverage he had in it. She admitted that she was getting a little bit concerned by that time about his drinking, and testified that it seemed to be affecting the way he was driving, and apparently at Cabell's and the next stop, she asked again if she could drive, and then asked him to take her home; but he stopped at a place called Day's (now called Danny's). She testified that they were parked at one end and appellee went to the other end and talked to somebody; and after a period of time estimated by her to be 15 or 20 minutes, he got back in the car, and she asked to be taken home, but appellee did not comply. She estimates that he had been mixing the coke and whiskey, which he said was Seagram's 7, about half and half. Appellant further testified that she did not press the matter of letting her drive or taking her home because she was afraid of his violent temper, and that he was just acting like somebody that was crazy and she didn't know what he was going to do. It is in the record that this couple had "gone steady" until graduation from high school, and she testified that he was a person of violent temper and had had several fights, and she was afraid of his temper. At one point in these trips, she says he threatened to hit her if she didn't quit asking to drive and to be taken home. Appellant further testified that the last stop, where he left the car for some 15 minutes and went to the end of the place now called Danny's, was a place that she had been many times before. She further testified that in the interval between the time they left Cabell's until they got to Danny's, she was getting even more concerned than she had been, and that he was driving fast and she was frightened. She said that when they stopped at Danny's for 15 or 20 minutes, she just sat in the car, and he went off to the other end—she didn't know where or what for—and that by that time he was getting pretty much under the influence of whatever he was drinking, because he was acting strange and doing things he wouldn't otherwise do if he hadn't been drinking. Appellant then testified that during the 15 or 20 minutes that she sat in the car, greatly concerned about her welfare, there was nothing at all to have prevented her from getting out of the car and going to a phone and talking to her mother and dad; that appellee hadn't locked her in or threatened her about getting out. She stated that she presumed that he would take her home as being one reason she did not get out of the car. However, we cannot consider this presumption as very helpful, as appellee would have had to take her home in the car and, presumably, in the same manner of reckless driving that had preceded the stop at Danny's.

It has been held that a person who fails, after learning that the driver of the car in which he is riding is under the influence of alcohol, to leave the car at the first fair and reasonable opportunity will be precluded from recovery against the driver. There is no controversy here over the defendant's being grossly negligent, his defense being that plaintiff had 15 or 20 minutes to get out of the car and call home or the police, or

take whatever protective measures were then present. Presumably, Danny's is some sort of a roadhouse or drivein and was presumably open, as there is no evidence to the contrary. The accident happened shortly after the couple left Danny's.

We feel that this case must be affirmed. The Supreme Court, in Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607, points out that one who discovers the intoxicated condition of the driver of the car and fails to leave after fair and reasonable opportunity to leave is afforded cannot be held to say that while he knew the driver to be intoxicated, he did not know the danger of remaining in the vehicle, because the law will charge him with knowledge of the danger and with acting in heedless and reckless disregard of his own safety. The Supreme Court bases this statement on a further statement to the effect that no person exercising even the slightest degree of care for his own safety would voluntarily remain in a motor vehicle being driven by one known to him to be intoxicated. To the same effect is Wilson v. Burleson, 358 S.W.2d 751 (Tex.Civ.App., n. r. e.). In the matter before us, it is clear that this girl had 15 or 20 minutes to get out of the car and go into Danny's and seek protection and perhaps transportation to her home, or communication with her parents. Even though she knew, from many dates and going out with the appellee, that he had a violent temper, in our opinion she still had ample opportunity to make some attempt to extricate herself from the situation by getting out of the car and going into Danny's, or hailing somebody else while appellee was absent.

We have studied the depositions and appellant's affidavit and must hold that her failure to make any attempt to extricate herself under the circumstances there present is fatal to her plea for recovery.

Appellant's point is therefore overruled and the judgment of the trial court affirmed.