Loraine McPHEARSON, Appellant,

v.

James J. SULLIVAN, Appellee.

No. 17118.

Court of Civil Appeals of Texas, Fort Worth.

July 17, 1970.

Rehearing Denied Sept. 11, 1970.

---

Hooper & Kerry, and David F. Chappell, Fort Worth, for appellant.

Cantey, Hanger, Gooch, Cravens & Munn, and John F. Taylor, Fort Worth, for appellee.

OPINION

LANGDON, Justice.

This case was initiated under the guest act, Article 6701b, § 1, Vernon's Ann.Civ. St., for injuries sustained by the plaintiff, Loraine McPhearson, on February 6, 1966, while a passenger in a car owned and driven by the defendant, James J. Sullivan. The petition alleged gross negligence in driving at an excessive rate of speed, in failing to keep proper control, and in driving while intoxicated. At the close of plaintiff's case a verdict was directed for the defendant.

We affirm.

The evidence offered by the plaintiff concerning the events leading up to the collision of the Sullivan car with a culvert in a bar ditch consisted of a portion of the deposition testimony of James J. Sullivan, the testimony of the plaintiff and of two investigating officers of the City of Fort Worth. The testimony of the two officers was devoted primarily to discrediting the defendant's testimony that an oncoming car approaching at a fast rate of speed with bright lights sideswiped his car and forced him off the road.

The testimony of the plaintiff for the most part is very confusing and conflicting. The testimony which she offered from the deposition of the defendant is also confusing. Most of the confusion related to the events which preceded the time when the parties to the suit finally got in the defendant's car and headed for the accident.

The facts pertinent to this appeal reflect that the plaintiff left home about 1 P.M. on the date in question and went to Evelyn's Crows Nest, a bar. She remained in the bar two or three hours. According to the plaintiff, "Evelyn had sold out, and she was giving free beer away * * * and I had drank three, two or three beers." Eventually Sullivan and a fellow who was identified only as Leroy appeared at the Crows Nest. The plaintiff was introduced to Leroy as being Sullivan's stepdaddy. She also testi-

fied that she had known both men a mighty long time, perhaps 7 or 8 years. She had known Sullivan for some time, having worked for him and his wife as a babysitter. Sullivan had driven her home on at least one other occasion and knew where she lived. On this occasion she requested Sullivan to take her home and he agreed to do so.

Sullivan, Leroy and the plaintiff all left the Crows Nest and got in Leroy's car and drove about thirty (30) blocks to Bill's Grocery. While it is not clear it appears that Leroy drove the car to Bill's Grocery. All three were seated in front. At the grocery the plaintiff went in and got a loaf of bread and then all three changed over to Sullivan's car which was parked in front of the grocery store. The change of cars was made because a glass or some part of the door of Leroy's car was in need of repair. Apparently when the three drove away from Bill's Grocery the plaintiff was seated in the front seat of the car. Sullivan was driving. The seating arrangement is not clear. The plaintiff was asked, "Were all three of you in the front seat when this thing happened?" She answered "No, sir." The defendant's testimony which was not denied was to the effect that the plaintiff and Leroy were doing the talking and saying nothing to him and that he was driving and watching what he was doing. They drove several miles. Instead of turning onto the plaintiff's street Sullivan drove out Azle Avenue and turned onto Boat Club Road. This turn according to authenticated maps and other evidence in the record is less than one mile and less than two or three minutes away from the site of the accident. Prior to the time this turn was made there is no evidence of complaint as to any act or omission on the part of the defendant other than when he failed to turn onto plaintiff's street she asked him why he was going the wrong way and he did not answer her.

It was after the turn onto Boat Club Road that the plaintiff said she asked the defendant three or four times to slow down and

that each time he went faster. This was the first reference to speed. The plaintiff testified that the defendant was going "pretty fast" and that he was driving "zig-zag" to either side of the road and left the road on the right side. The zigzag occurred approximately three-quarters (¾ths) of a block from the point of impact. The car then left the road and crashed into a culvert before reaching the beginning of the curve.

Plaintiff was unable to recall other events about the "exact" collision or to remember it. She estimated it was three or four minutes from the turn onto Boat Club Road before the accident occurred. Since in our opinion it has been established that the distance from the turn to the point of collision is less than a mile the plaintiff's estimate of time would indicate the defendant was driving at a slower rate of speed than 50 miles per hour which he testified to. The record does not clearly reflect where the posted speed limit areas began and ended. It was established that there was a 45 mile per hour limit in the area which had been travelled by Sullivan and a 50 mile per hour limit in the area ahead which approached a sweeping curve. The car never reached the curve. At fifty miles per hour the defendant was driving within the lawful limit or 5 miles in excess thereof depending on where the posted speed limits commenced and ended. Plaintiff offered no explanation as to what caused the car to zigzag. She did not see any lights approaching them. She did not see or recall a car sideswiping and forcing the defendant's car off the road. She next remembered waking up in the hospital. While there she was visited by the defendant who told her she had better keep her mouth shut. She did not say for what purpose she was to keep her mouth shut or about what and did not connect this statement in any way with the collision or the cause thereof.

On cross-examination the plaintiff was referred to statements made by her in a previous deposition. She stated that when her deposition was taken she was confused

and did not understand. She stated it was true that in the previous deposition she had said that she did not remember about the accident too good and that she had difficulty remembering about the accident and what had happened. She stated that she had never driven a car and had never had a driver's license. In the prior deposition she was asked, "Can you give me or do you feel like since you don't drive that you are capable of judging or estimating miles per hour?" She answered, "No, sir, I don't." Plaintiff did not recall having so answered. The one remaining reference to speed was plaintiff's statement that when a man is driving a car real, real fast she gets scared and that she was scared on the occasion in question.

On the subject of intoxication the plaintiff was asked on direct examination: "Q. All right. Had he been drinking, or could you tell? A. Yes, sir." This line of questioning was not pursued. The plaintiff did not testify that the defendant had been drinking. Her testimony was only to the effect that she could tell whether or not he had been drinking. This was the only testimony relating to the sobriety of Sullivan. There was no testimony that "drinking" affected his personal conduct or his driving. Had such drinking, if any, induced intoxication or incapacity on his part this should have been apparent to the plaintiff during the 30 block ride in Leroy's car with the defendant and during their stop at Bill's Grocery where she purchased a loaf of bread and changed over to the defendant's car.

■ Had it appeared to the plaintiff on the drive to Bill's Grocery that the defendant was intoxicated and incapable of safe driving she had a fair and reasonable opportunity to refuse to get into his car. No reference is made to his conduct during this drive as to intoxication or otherwise. Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607 (1952); Vanderburg v. Garrett, 443 S.W.2d 68 (El Paso Civ.App., 1969, no writ hist.). See 7 Tex.Jur.2d, pages 609–611, §§ 242, 243 and 244; § 282, p. 657, of same text; and 15 A.L.R.2d 1165.

The above authorities would preclude the plaintiff from emphasizing the amount or degree of intoxication on the part of the defendant up to the time she got in his car and drove away from Bill's Grocery. There was no evidence or indication that the defendant had anything to drink after leaving Bill's Grocery Store.

■ To hold the driver of a car liable under the guest statute for injuries sustained by his guest requires more than a showing of ordinary negligence on his part. The conduct of the driver must have been "intentional" or else it must be shown that he was guilty of "heedlessness" or "reckless disregard of the rights of others." Art. 6701b, § 1, V.A.C.S.

■ In a suit under the guest statute the plaintiff is required to prove that the defendant has been guilty of that degree of negligence prescribed by the Statute.

The plaintiff in such a suit will not be relieved of the burden of proof required of her by law because she is a mental retard or because she is confused and fails to understand what happened. She, like any other plaintiff, must produce the evidence to support her claim.

■ The plaintiff in this cause has failed to meet the burden of proof required of her. In viewing the evidence in this case in the light most favorable to the plaintiff and the inferences which may reasonably be drawn therefrom we would have to stretch our imagination to find an inference of even ordinary negligence. Certainly there is no showing of the type of negligence required by the guest statute.

■ Driving at an unlawful rate of speed or traveling on the wrong side of the highway constitutes no more than ordinary negligence. Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022 (1940); Crosby v. Strain, 99 S.W.2d 659 (San Antonio Civ. App., 1936, err. dism.); Pfeiffer v. Green, 102 S.W.2d 1077 (Beaumont Civ.App., 1937, no writ hist.); Linn v. Nored, 133

S.W.2d 234 (Austin Tex.Civ.App., 1939, err dism., judg. corr.); Mayer v. Johnson, 148 S.W.2d 454 (Amarillo Tex.Civ.App., 1941, err. dism., judg. corr.); Wood v. Orts, 182 S.W.2d 139 (San Antonio Tex. Civ.App., 1944, no writ hist.); and Hamilton v. Perry, 109 S.W.2d 1142 (Texarkana Tex.Civ.App., 1937, no writ hist.).

In driving off traveled portion of the road while intoxicated, and colliding with bridge abutment, motorist was guilty of only ordinary negligence. Ray v. Zackey, 329 S.W.2d 350 (Waco Tex.Civ.App., 1959, no writ hist.). To same effect see Pfeiffer v. Green, supra.

■ "High and excessive speed is mere ordinary negligence and not gross negligence, * * *." Farney v. Herr, 358 S. W.2d 758 (Fort Worth Tex.Civ.App., 1962, no writ hist.). To same effect see Berentsen v. Bellinghausen, 403 S.W.2d 816 (Corpus Christi Civ.App., 1966, no writ hist.); Cone v. Smith, 76 So.2d 46 (La.App., 1954).

The record contains no evidence as to the lack of proper control. The Texas Supreme Court in 1965 held that proper control is a global issue and is never properly submitted over objection. Barclay v. C. C. Pitts Sand and Gravel Company, 387 S.W.2d 644 (Tex.).

The only evidence on control is the fact that the accident occurred after Sullivan's car zigzagged and went off the road.

■ There is no competent evidence in this record sufficient to raise an issue of driving while intoxicated. Such evidence as has been referred to without testimony as to intoxication is not sufficient to infer intoxication. Chairez v. State, 98 Tex.Cr.R. 433, 265 S.W. 905 (1924); Van Zandt v. Schell, 200 S.W.2d 725 (Fort Worth Tex.Civ.App., 1947, no writ hist.). There is no testimony whatsoever of any conduct or appearance to indicate intoxication or the amount of alcohol consumed. The cases of Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792 (1951), and Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513

(1941), hold that intoxication is not an ultimate fact issue to be submitted to the jury. It may be considered by the jury on other fact issues.

■ Appellant claims to have alleged gross negligence by appellee's "disregard of requests to slow down." Disregarded requests to slow down are not negligence in themselves, and are only evidence to be considered on other issues. Bruton v. Shinault, 314 S.W.2d 143 (Waco Tex.Civ. App., 1958, no writ hist.); Aycock v. Green, 94 S.W.2d 894 (San Antonio Tex. Civ.App., 1936, writ dism.).

In Wood v. Orts, supra, the defendant drove at night at a speed of 75 miles per hour. He drove off the left side of the road, after which he hit five guard posts and a bridge abutment without applying his brakes or slackening his speed. In affirming a directed verdict for the defendant, the court said:

"Driving at an excessive rate of speed, failure to keep a proper lookout, driving on the left-hand side of the road, failure to apply the brakes and failure to slacken the speed, are all acts of ordinary negligence, and do not in themselves constitute reckless and heedless disregard of the rights of others."

Bruton v. Shinault, supra, is similar to the present fact situation. There the driver drove 70 to 80 miles per hour on a curving, gravel road. The plaintiff guest's requests to slow down were unheeded, and the car turned over on a curve. There the court said:

"So here we have excessive speed as the sole cause of the accident and excessive speed constitutes the sole negligent act of the driver of the car. As we understand the decisions of our Supreme Court and the many decisions of the appellate courts here cited and referred to, we are of the view that the excessive speed under all of the undisputed record and surrounding facts and circumstances does not constitute negligence under our guest statute,

and by reason thereof the appellees have failed to make a prima facie case against appellants."

In Webb v. Karsten, 308 S.W.2d 114 (Houston Tex.Civ.App., 1957, no writ hist.), the judgment of the trial court in directing a verdict for the defendant was affirmed where the car was driven at an estimated speed of between 60 and 80 miles per hour in a residential district where the speed limit was 30 miles per hour. Gill v. Minter, 233 S.W.2d 585 (San Antonio Tex. Civ.App., 1950, writ ref.), held 50 to 60 miles per hour for two or three blocks with requests to slow down was not gross negligence as a matter of law. In Mayer v. Johnson, supra, and Aycock v. Green, supra, where there were requests to slow down, proof of excessive speed, and other acts of ordinary negligence, the courts held that the evidence did not establish gross negligence.

All points of error are overruled and the judgment of the trial court is affirmed.